**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

                Plaintiff(s),           **CASE NUMBER: 05-80025
HONORABLE VICTORIA A. ROBERTS**

v.

**D-1 TIMOTHY DENNIS O'REILLY**,

                **Defendant(s).**
_____/

**ORDER**
(REGARDING DOCUMENT #199)

**I.    INTRODUCTION**

This matter is before the Court on Defendant Timothy Dennis O'Reilly's Motion to Strike the Death Penalty because it Violates the Rights of the Citizens of Michigan not to be a part of an Inhumane, Corrosive, Destructive Process in Violation of the Rights of the Sovereign State of Michigan and its Citizens as Guaranteed by the U.S. Constitution (Doc. #199).

Defendant O'Reilly ("O'Reilly") asserts that enforcing the Federal Death Penalty Act, 18 U.S.C. §3591, in Michigan is unconstitutional because it violates the Fifth, Sixth, Eighth, Ninth, and Tenth Amendments to the United States Constitution, as well as Article IV, Section 4. While O'Reilly mentions all of the above constitutional amendments, he only argues that it violates the Commerce Clause; the Ninth and Tenth Amendments; and Article IV, Section 4. Accordingly, the Court determines that O'Reilly abandoned his Fifth, Sixth, and Eighth Amendment claims.

1

O'Reilly's motion is **DENIED**.

II.     **ARGUMENTS AND ANALYSIS**

   **A. Commerce Clause Argument**

O'Reilly first argues that the federal government is limited in power to such things as providing a national defense; printing money; and taking reasonable, but not unlimited steps to preserve the flow of commerce. According to O'Reilly, absent a "unique federal interest," the Commerce Clause of Article I, section 8, cl. 3 is the sole authority for federal criminal law enforcement. Because there is nothing uniquely federal about murder, even when it is committed in connection with a robbery,[1] O'Reilly argues that Congress oversteps its authority under the Commerce Clause to regulate O'Reilly's crimes. In support of his argument, O'Reilly relies on the United States Supreme Court decision that the Gun-Free Schools Act "exceeds the authority of Congress '[t]o regulate commerce . . . among several States. . . .'" *United States v. Lopez*, 514 U.S. 549, 551 (1995) (quoting US Const. Art. I, §8, cl.3).[2] In addition, O'Reilly cites to a Third Circuit case that rejected the Government's post-*Lopez* argument that a statute only requires proof of a *de minimis* effect on interstate commerce. Such an inconsequential effect cannot support the exercise of federal

---

[1]O'Reilly states that a law prohibiting the murder of a federal official would be an example of a unique federal interest.

[2]O'Reilly compares the statute in *Lopez* to the Violent Crimes in Aid of Racketeering Activity statute, 18 U.S.C. §1959, and states that it also does not contain a sufficient nexus for an analysis to determine whether the alleged acts of violence have a "substantial affect" on interstate commerce.

jurisdiction over a purely intrastate concern.  *United States v. McGuire*, 178 F.3d 203, 210 (3rd Cir. 1999).

Based on these cases, O'Reilly argues that the Commerce Clause does not extend to the purely intrastate crimes of bank robbery, murder, and use of a firearm in relation to a crime of violence.  According to O'Reilly, the federal government exceeded its scope of authority by seeking the death penalty.[3]  This Court rejects his argument.

Under its commerce power, Congress has the power to regulate the following three broad categories of activity: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce, including persons or things in interstate commerce; and (3) those activities having a substantial relation to interstate commerce. *Lopez*, 514 U.S. at 558-59.

O'Reilly is charged with bank robbery, in violation of 18 U.S.C. §2113(a); premeditated murder, in violation of 18 U.S.C. §924(j); and use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. §924(c).  The question is:  do O'Reilly's crimes fit into any of these three categories that Congress is allowed to regulate?

The Seventh Circuit found that "FDIC-insured banks are fundamental to the conduct of interstate commerce" and are "instrumentalities and channels of interstate commerce." *United States v. Watts*, 256 F.3d 630, 633-34 (7th Cir. 2001).  In addition, "[t]heir regulation is well within Congress's Commerce Clause power.  Section 2113 withstands constitutional analysis under *Lopez*." *United States v. Harris*, 108 F.3d

---

[3]O'Reilly states that this has been done essentially for political reasons.  In political seasons, Congress has dramatically expanded the reach of the federal death penalty, and the Attorney General has suggested that he wants to expand the reach of the death penalty to all states.

3

1107, 1109 (9th Cir. 1997). The Sixth Circuit also holds that Section 2113 is constitutional because there is a requisite nexus with interstate commerce. *See United States v. Robinson*, 389 F.3d 582, 594 (6th Cir. 2004). Furthermore, "[w]here economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained." *Lopez*, 514 U.S. at 560. Not only are banks instrumentalities and channels of interstate commerce, but intrastate bank robbery substantially affects interstate commerce. *United States v. Spinello*, 265 F.3d 150, 155 (3rd Cir. 2001).[4]

Unlike in *Lopez* where the Court held that the Gun-Free Schools Act was unconstitutional under the Commerce Clause because it did not have any relation to economic activity, banks are completely economic, and individuals rob banks solely for economic gain. Therefore, federal legislation criminalizing intrastate bank robbery is a legitimate exercise of authority pursuant to the Commerce Clause.

In addition, O'Reilly's alleged murder while robbing a federally-insured financial institution may be regulated under the Commerce Clause. In *United States v. Ricketts*, 317 F.3d 540, 543 (6th Cir. 2003), the Sixth Circuit held that a firearm murder during a drug conspiracy, in violation of 18 U.S.C. §924(j),[5] is tied to the underlying offense, which substantially affects interstate commerce. Because the facts of this case are analogous to *Ricketts*, it is instructive. The only difference between the two cases is that the underlying offense here is bank robbery. However, bank robbery substantially

---

[4]Although O'Reilly is charged with robbing a Federal Credit Union, which is not insured by the FDIC, it is insured by the National Credit Union Administration, which is similar to the FDIC. "Credit union" is also included under 18 U.S.C. §2113(a).

[5]When the case was decided, 18 U.S.C. §924(j) had been codified as 18 U.S.C. §924(i).

affects interstate commerce just as a drug conspiracy can. And, because the murder occurred during the commission of the bank robbery, the two crimes are treated as one transaction. Where a subclass of activity that is regulated (here, murder during a credit union robbery) is an essential part of a larger scheme of interstate, economic regulation, the regulation of that subclass of activities is permissible. *See Gonzales v. Raich*, 545 U.S. 1, 17 (2005).

Similarly, O'Reilly's use of a firearm in relation to a crime of violence charge, 18 U.S.C. §924(c)(1), may be regulated under the Commerce Clause. "Prosecution under section 924(c)(1) does not occur in a vacuum. Rather, it is triggered when one 'uses or carries' a firearm during a . . . violent crime for which the individual may be independently prosecuted." *United States v. Brown*, 72 F.3d 96, 96 (8th Cir. 1995). Intrastate bank robbery is a "crime of violence" because it is a felony that has as an element, the use, attempted use, or threatened use of physical force against the person or property of another. *See* 18 U.S.C. §924(c)(3); 18 U.S.C. §2113(a). Because O'Reilly's §924(c)(1) charge is based on his §2113(a) bank robbery charge, which substantially affects interstate commerce, this Court finds that O'Reilly's charge under §924(c)(1) does not exceed Congress's power under the Commerce Clause.

The crimes that O'Reilly is charged with can be regulated by Congress under the Commerce Clause. His argument that purely intrastate crimes cannot be regulated by federal law enforcement is rejected.

### B. Tenth Amendment Argument

The Tenth Amendment to the Constitution provides: "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved

5

for the States respectively, or to the people."

O'Reilly contends that the federal government seeking the death penalty violates state sovereignty because Michigan is a non-death penalty state. O'Reilly argues that in areas that are not uniquely federal, the founding fathers held that the States are paramount to the federal government. O'Reilly argues that because the death penalty is destructive, inhumane, and corrosive to everyone associated with the criminal justice system, Michigan has the right to protect its citizens from participation in such a system and has done so since 1846. O'Reilly cites a United States Supreme Court case for the proposition that in keeping with the concept of Federalism, "Congress has traditionally been reluctant to define as a federal crime conduct readily denounced as criminal by the States." *United States v. Bass*, 404 U.S. 336, 349 (1971). In addition, O'Reilly mentions that there is a delicate balance between federal and state sovereignty, and the federal judicial system should not be used to enforce a state law which was never enforced by a local prosecutor pursuant to state policy. *See United States v. Ferber*, 966 F.Supp. 90 (D. Mass., 1997).

A similar argument was made in *United States v. Tuck Chong*, 123 F.Supp.2d 563 (D. Hawaii 1999). The defendant argued that the Government may not seek a death sentence because state law did not provide for the death penalty, and imposing a death sentence would violate Hawaii's State sovereignty, the Tenth Amendment, and the Equal Footing Doctrine.[6] *Id.* at 566. The court stated that "[t]he Supremacy Clause,

---

[6]Under the "equal footing doctrine," all states are admitted to the Union with the same attributes of sovereignty as the original 13 States. *See Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172 (1999). This doctrine prevents the Federal Government from impairing the fundamental attributes of state sovereignty when it

6

the Civil War, the decisions of the Supreme Court, and acts of Congress make clear that so long as there is a constitutionally authorized federal nexus, the federal government is free to act anywhere within the United States." *Id.* at 567 (quoting *United States v. Lampley*, 127 F.3d 1231, 1246 (10th Cir. 1997)). Furthermore, "[s]entencing Defendant according to federal law for a federal crime neither violates Hawaii State sovereignty nor the Tenth Amendment, under the doctrine of dual sovereignty." *Tuck Chong*, 123 F.Supp.2d at 567.

The federal death penalty has been sought in Puerto Rico, another non-death penalty state. The court held that although the Commonwealth grants Puerto Rico authority over its own local affairs, "Congress maintains similar powers over Puerto Rico as it possesses over the federal states." *United States v. Acosta-Martinez*, 252 F.3d 13, 18 (1st Cir. 2001) (quoting *United States v. Quinones*, 758 F.2d 40, 43 (1st Cir. 1985)). The court recognized the strength of Puerto Rico's interest and sentiments against the death penalty, but stated that the federal interest in punishing violations of federal law is manifest. *Acosta-Martinez*, 252 F.3d at 19.

The federal death penalty has been obtained in other non-death penalty states as well. *See e.g., United States v. Fell*, 360 F.3d 135 (2nd Cir. 2004) (Vermont); *United States v. Sampson*, No. 01-10384-MLW (D. Mass. 2004); *United States v. Gabrion*, No. 1:99-CR-76 (W.D. Mich. 2006); *United States v. Rodriguez*, No. 2:04-cr-55 (D.N.D. 2007).

While Michigan is free to prohibit the death penalty for state-charged crimes, this

---

admits new States into the Union.

federal Court cannot prohibit imposition of the death penalty when authorized by federal law for federally-charged crimes, and when the tide of precedent dictates against a prohibition.

### C. Article IV, Section 4 and Ninth Amendment Arguments

Article IV, Section 4, the "Guarantee Clause," and the Ninth Amendment to the Constitution provide: "[t]he United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence." U.S. Const. Art. IV, §4. "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. Amend. IX.

O'Reilly argues that the authority of the people of the State of Michigan to abolish death as a criminal penalty represents the "heart of representative government." O'Reilly contends that to force the citizens of Michigan to participate in a process which the Michigan legislature rejects would replace Michigan's republican form of government with a legislative despotism imposed by Congress and carried out through the federal courts without justification. This argument is unavailing. With certain exceptions, Guarantee Clause claims involve a political question and are nonjusticiable. *New York v. United States*, 505 U.S. 144, 184-85 (1992).

Furthermore, even assuming O'Reilly's claim falls within an exception and is justiciable, this Court still finds that the authorization of the death penalty in O'Reilly's case is permissible. O'Reilly does not indicate how federal prosecution deprives

8

Michigan of a representative government. Michigan still retains the authority through its elected representatives, and under its States law, to prohibit capital punishment in State prosecutions.

It has been argued that the Ninth Amendment protects rights not enunciated in the first eight amendments. *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986) (citing *Griswold v. Connecticut*, 381 U.S. 479 (1965); Wise *v. Bravo*, 666 F.2d 1328, 1332 (10th Cir. 1981)). Because O'Reilly does not identify any unenumerated right the Government violated by seeking the death penalty, this Court rejects his Ninth Amendment claim.

## III. CONCLUSION

The Court **DENIES** Defendant's Motion.

**IT IS ORDERED.**

                                        s/Victoria A. Roberts
                                        Victoria A. Roberts
                                        United States District Judge

Dated: August 23, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 23, 2007.

s/Carol Pinegar
Deputy Clerk