UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff(s),        CASE NUMBER: 05-80025
                                            HONORABLE VICTORIA A. ROBERTS

v.

D-1 TIMOTHY DENNIS O'REILLY,

        Defendant(s).
_____/

**ORDER**
(REGARDING DOCUMENT #208)

**I.    INTRODUCTION**

This matter is before the Court on Defendant Timothy Dennis O'Reilly's Motion to Dismiss the Prosecution's Request for the Death Penalty because the Defendant's Race was Improperly used as a Consideration by the Department Of Justice in its Decision to Seek the Death Penalty and Incorporated Brief (Doc. #208).

Defendant's motion is **DENIED**.

**II.    ARGUMENTS AND ANALYSIS**

Defendant Timothy Dennis O'Reilly ("O'Reilly") argues that because he is white, the Government violated his Fifth and Eighth Amendment rights when it announced its intention to seek the death penalty.[1] In support of his motion, O'Reilly argues that the Department of Justice ("DOJ") is attempting to provide a more balanced record in the

---

[1] O'Reilly also mentions a violation of his Sixth Amendment rights, but does not provide any support.

1

racial composition of its death penalty prosecutions. He cites *The Federal Death Penalty System: A Statistical Survey (1988-2000)* published by the DOJ for the proposition that historically, a substantial majority of death penalty prosecutions are against non-whites. *See* Gov't. Exh. A. This racial disparity was criticized by both Congressional leaders and the public. The Survey states that DOJ instituted a procedure to prevent race from playing a role in the capital process. However, according to O'Reilly, the remedy was actually an overreaction which resulted in a racial bias against whites who are now targeted for the death penalty. O'Reilly argues that Attorney General Gonzales intentionally selects whites for capital prosecution and similarly situated non-whites are not so prosecuted. O'Reilly further argues that he is one of the "victims" targeted by Attorney General Gonzales for the death penalty because of his race.

The Court rejects this argument.

The equal protection component of the Due Process Clause of the Fifth Amendment prohibits a prosecutor from determining whether to prosecute a defendant solely on the basis of race. *United States v. Armstrong*, 517 U.S. 456, 464 (1996). However, the United States Supreme Court holds that the Attorney General and United States Attorneys have broad discretion to enforce the criminal laws. *Id.* As a result, "[t]he presumption of regularity supports" their prosecutorial decisions and, "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id.* (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15). The claimant must demonstrate that the federal prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id.*

2

at 465.

Here, O'Reilly asserts that the current "policy" that targets whites is as unlawful as the prosecution's earlier racially disparate policy which disfavored non-whites. O'Reilly's mere assertion does not establish that such a targeting policy exists. But, O'Reilly's burden is also to establish a discriminatory effect, and to do so, he must produce some evidence that similarly situated individuals of a different race could have been prosecuted, but were not. *Id.* at 469. In an effort to meet this burden, O'Reilly asserts that when compared with cases in this and other jurisdictions where the Attorney General did not request the death penalty, there is no doubt that his prosecution is driven by unconstitutional racial considerations. Furthermore, O'Reilly argues that there is a disconnect between his case and other cases that on their face appear to be much more "death worthy."

O'Reilly does not offer any cases to support these contentions, and his generalized statement is insufficient. Noteworthy, the most similarly situated individuals to O'Reilly are his two African-American co-defendants, Norman Duncan and Kevin Watson, both of whom have been recommended for the death penalty.

O'Reilly relies on statistics to show that his prosecution is race-related. He states that whites face the death penalty in 57% of the potential cases, when virtually no whites got the death penalty before 1995. O'Reilly provided charts to compare the "Odds of Facing the Death Penalty by Race of Defendant and Victim Combinations" statistics from John Ashcroft's days as Attorney General and statistics under Gonzales. This evidence is insufficient as well. While the Sixth Circuit concluded that nationwide statistics demonstrated a "credible showing" that "similarly situated individuals of a

different race were not prosecuted" in compliance with *Armstrong*, *See United States v. Bass*, 266 F.3d 532 (6th Cir. 2001), this decision was overruled when the United States Supreme Court held that "raw statistics regarding overall charges say nothing about charges brought against *similarly situated defendants*." *United States v. Bass*, 536 U.S. 862, 864 (2002) (emphasis in original).

It is true that statistics have been accepted to prove statutory violations under Title VII of the Civil Rights Act of 1964. *See Bazemore v. Friday*, 478 U.S. 385, 400-01 (1986). In addition, the United States Supreme Court accepted statistics as proof of an equal protection violation in the selection of the jury venire. *See Arlington Heights Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 266 (1977). However, *McCleskey v. Kemp*, 481 U.S. 279, 294 (1987), holds that "the nature of the capital sentencing decision, and the relationship of the statistics to that decision, are fundamentally different from the corresponding elements in the venire-selection or Title VII cases." Using his statistical evidence alone, O'Reilly failed to meet his burden to prove a discriminatory effect in his prosecution.[2]

Furthermore, O'Reilly asserts the DOJ deliberately used selective enforcement procedures based on race, which is unjustifiable. *See, e.g.*, *Oyler v. Boles*, 368 U.S. 448, 456 (1962) and *Bordenkircher v. Hayes*, 434 U.S. 357, 364-65 (1978). O'Reilly states that the Attorney General knew he was white because of his name, and as a

---

[2]In Tennessee, a defendant filed a similar motion to dismiss the Government's request for the death penalty because it was motivated, in part, by his race. The court held that general statistics, without more, are insufficient to satisfy the discriminatory intent element. *United States v. Holloway*, 29 F.Supp.2d 435, 442 (M.D. Tenn. 1998) (citing *McCleskey*, 481 U.S. at 292-93).

result, approved the death penalty recommendation.[3]  However, the Death Penalty Protocol does not support this argument.  It states that, "[a]rbitrary or impermissible factors–such as a defendant's race, . . . –will not inform any stage of the decision-making process."  U.S. Attorney's Manual §9-10.030.  In addition, "[b]ias for or against an individual based upon characteristics such as race . . . play[sic] no role in any recommendation or decision as to whether to seek the death penalty."  *Id.* at §9-10.130.  United States Attorneys and the Attorney General are both required to follow the Death Penalty Protocol, and there is a presumption that prosecutors properly discharge their official duties.  *See Armstrong*, 517 U.S. at 464.  Without concrete evidence that the DOJ deliberately sought the death penalty against O'Reilly, the Court rejects this argument.

Lastly, O'Reilly argues that there is an "unacceptable risk" that the decision to seek the death penalty based on his race was a violation of his protections against cruel and unusual punishment guaranteed by the Eighth Amendment because the DOJ does not have any written standards or criteria for determining which eligible cases merit prosecution as a death penalty case.  However, the Death Penalty Protocol provides "policies and procedures for all Federal cases in which a defendant is charged, or could be charged, with an offense subject to the death penalty."  U.S. Attorney's Manual §9-10.010.  Before seeking the death penalty, the United States Attorney must allow counsel for the defendant a reasonable opportunity to present mitigating factors, and

---

[3]O'Reilly argues that although his co-defendants are African-American, the Attorney General thought he was getting three new "white" cases rather than one because their names also sound white.

5

should consult with the family of the victim.  The United States Attorney must then notify the Capital Case Unit when a capital offense is charged and provide the Unit with a copy of the indictment and case number.  A capital offense indictment must then be submitted to the Assistant Attorney General for the Criminal Division.  The Attorney General makes the final decision concerning the death penalty.  *Id.* at §§ 9-10.040, 9-10.050, 9-10.070, 9-10.080.  Furthermore, the Death Penalty Protocol includes "Standards for Determination:" fairness, national consistency, adherence to statutory requirements, and law-enforcement objectives.  *Id.* at §9-10.130.

In addition, it has been held that a sentence is not disproportionate within any recognized meaning under the Eighth Amendment when the defendant's sentence was based on the particularized nature of the crime and the particularized characteristics of the individual defendant.  *McCleskey*, 481 U.S. at 308.  The Death Penalty Protocol provides that the background and criminal record of the capital defendants should be reviewed as a basis for the United States Attorney's recommendation to seek the death penalty.  U.S. Attorney's Manuel §9-10.080.

Absent clear evidence to the contrary, this Court presumes the United States Attorney followed the Protocol, and that race was not a factor when he sought the death penalty against O'Reilly.

### III. CONCLUSION

The Court **DENIES** Defendant's Motion.

**IT IS ORDERED.**

                                           s/Victoria A. Roberts
                                           Victoria A. Roberts
                                           United States District Judge

Dated: August 23, 2007

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 23, 2007.

s/Carol Pinegar
Deputy Clerk

---