**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff(s),**     **CASE NUMBER: 05-80025
                 HONORABLE VICTORIA A. ROBERTS**

v.

**D-1 TIMOTHY DENNIS O'REILLY**,

    **Defendant(s).**
_____/

**ORDER**
(REGARDING DOCUMENT #210)

## I.   INTRODUCTION

This matter is before the Court on Defendant Timothy O'Reilly's Motion to Declare Rule 16 of the Federal Rules of Criminal Procedure ("Rule 16"), 18 U.S.C. §3500 ("The Jencks Act") and 18 U.S.C. §3432 Unconstitutional as Applied to Defendants Charged with Federal Capital Crimes in General and as Applied to Timothy O'Reilly in Particular (Doc. #210).[1] Defendant O'Reilly ("O'Reilly") argues that in capital prosecutions, Rule 16, The Jencks Act, and 18 U.S.C. §3432 violate the Fifth, Sixth, and Eighth Amendments to the United States Constitution.[2]

While O'Reilly mentions the Sixth and Eighth Amendments, he only argues that his Fifth Amendment rights have been violated. Accordingly, the Court determines that

---

[1]The Government did not file a response to this motion.

[2]O'Reilly also argues that the restrictions placed on access to crucial Government witness statements eliminate the concept of fundamental fairness and violate the due process clause of the Fourteenth Amendment. The Fourteenth Amendment is inapplicable to a federal prosecution.

1

O'Reilly abandoned his Sixth and Eighth Amendment claims.

O'Reilly's motion is **DENIED**.

## II. APPLICABLE LAW

### A. Rule 16

Fed. R. Crim. P. 16(a)(2) provides in relevant part, "[e]xcept as Rule 16(a)(1) provides otherwise[3]. . . this rule [does not] authorize the discovery or inspection of statements made by prospective government witnesses except as provided in [The Jencks Act]."

### B. The Jencks Act

The Jencks Act provides:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena [sic], discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. §3500.

### C. 18 U.S.C. §3432

> A person charged with treason or other capital offense shall at least three entire days before commencement of trial be furnished with a copy of the . . . witnesses to be produced on the trial for proving the indictment, stating the place of abode of each . . . witness, except that such list of the . . . witnesses need not be furnished if the court finds by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person.

## III. ARGUMENTS AND ANALYSIS

---

[3]O'Reilly is not requesting any information contained in Fed. R. Crim. P. 16(a)(1).

The court cannot disagree with O'Reilly that the sentence of death is very different from any other sentence. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976); *Zant v. Stephens*, 462 U.S. 862, 884 (1983); *Thompson v. Oklahoma*, 487 U.S. 815, 856 (1988); *Ex Parte Monk*, 557 So.2d 832, 836 (Ala. 1989); *Gregg v. Georgia*, 428 U.S. 153, 187 (1976); *Gardner v. Florida*, 430 U.S. 349, 357 (1977) ("[f]ive members of the Court have . . . expressly recognized that death is a different kind of punishment from any other which may be imposed in this country.").

Given the "heightened reliability" requirement in death penalty cases, O'Reilly states that if he is not afforded a fair trial, his sentence cannot be reliable. *See, e.g., Lockett v. Ohio*, 438 U.S. 586, 603-05 (1978) (Court required consideration of all relevant mitigating evidence in a capital case); *Caldwell v. Mississippi*, 472 U.S. 320, 323 (1985) (prosecution could not tell the jury that errors made at trial could be corrected on appeal because it lowered the jury's sense of responsibility for its sentencing decision); and *Lankford v. Idaho*, 500 U.S. 110, 127 (1991) (capital defendant is entitled to fair notice of issues to be resolved at trial).

Further, O'Reilly states that because the sentence of death is so different from any other type of punishment, the sentencing phase is critical. *Lesko v. Lehman*, 925 F.2d 1527, 1541 (3rd Cir. 1991) ("[t]he sentencing phase of a death penalty trial is one of the most critical proceedings in our criminal justice system."). O'Reilly argues that steps must be taken to ensure the guilt phase of the death penalty prosecution is equally as important. *See Beck v. Alabama*, 447 U.S. 625, 638 (1980) ("[t]o insure that the death penalty is indeed imposed on the basis of 'reason rather than caprice or emotion,' we have invalidated procedural rules that tended to diminish the reliability of

3

the sentencing determination. The same reasoning must apply to rules that diminish the reliability of the guilt determination.").

To reach this goal, O'Reilly believes the Court must declare Rule 16, The Jencks Act, and 18 U.S.C. §3432 unconstitutional in death penalty prosecutions. According to O'Reilly, the current law is fundamentally unfair because it denies him the benefit of the full impact of cross-examination, denies him adequate preparation of his defense, and denies him access to Government witness statements.[4]

O'Reilly asserts that it is imperative that he receive a fair trial at the district court level because the Antiterrorism and Effective Death Penalty Act of 1996 limited the time available for filing federal habeas. According to O'Reilly, if he is convicted, he will not have the opportunity to have several appeals on the "myriad of issues" that may need to be resolved. O'Reilly states that adequate discovery is meant to eliminate the concept of trial by ambush and ensure fairness in the system. *Lanari v. People*, 827 P.2d 495, 499 (Colo. 1992) ("[t]he discovery rules in criminal proceedings are designed to further the truth-seeking process. By permitting the prosecution and defense to obtain relevant information prior to trial, the rules also promote fairness in the criminal process by reducing the risk of trial by ambush.").

O'Reilly also asserts that he risks being surprised by witness statements either at

---

[4]O'Reilly assumes that at trial, the Government will produce witness statements made to law enforcement agents linking him to the alleged crimes. O'Reilly states that the Government has indicated that witnesses' statements would be available "as appropriate."

4

trial or within a few weeks prior to trial,[5] but the purpose of pre-trial discovery is to eliminate unfair surprise. *Phillips v. State*, 550 N.E.2d 1290, 1299 (Ind. 1990); *see also State v. Kehner*, 776 S.W.2d 396, 397 (Mo. Ct. App. 1989) ("[t]he basic object of the discovery process in criminal proceedings is to permit the defendant a decent opportunity to prepare in advance of trial and avoid surprise . . . ."); *State v. DiTolvo*, 640 A.2d 1230, 1232 (N.J. Super. Ct. Law Div. 1994) (explaining that its pre-trial discovery rules are meant "[t]o prevent surprise, eliminate gamesmanship, and afford a party an opportunity to obtain evidence and research law in anticipation of evidence and testimony which an adversary will produce at trial."). Further, O'Reilly mentions *People v. Tribbett*, 232 N.E.2d 523 (Ill. App. Ct. 1967) for the proposition that surprise "negates equality and without that rough equality, a criminal trial will not produce the desired result, which is . . . to discover so far as human agencies can, whether a defendant is guilty or not guilty." *Id.* at 526. O'Reilly argues that the only way to negate surprise, adequately prepare a defense, comply with the Fifth Amendment, and avoid an unreliable decision, is to allow a capital defendant a greater opportunity to investigate statements made against him.

According to O'Reilly, this was properly done in *Ex Parte Monk*, 557 So.2d 832 (Ala. 1989). The trial judge ordered that the district attorney maintain an ongoing "open file" policy. Upon written request, the State was required to allow the defendant's attorney(s):

[f]ull and complete access to all documents, statements, writings,

---

[5]O'Reilly states that even 60 days is not enough time to properly investigate both the source and content of the statements.

> photographs, recordings, evidence, reports or any other file materials in possession of the state, any agent or agency of the state, or any police agency involved in this case, which is known to exist or which with due diligence could be determined to exist, and to allow said attorney(s) to inspect, test, examine, photograph, or copy the same.

*Id.* at 834. During the hearing on the district attorney's motion to vacate this discovery order, the trial judge stated that his rationale for ordering such a broad discovery policy was "because this is a capital case . . . [and] the majority of capital cases being reversed on appeal . . . are being reversed on . . . [a] discovery violation . . . ." *Id.* at 835.

Upon reviewing the order granted by the trial judge, the Alabama Supreme Court held that, "[c]apital cases are sufficiently different by their very nature, and . . . the discovery order . . . was within the discretionary authority of the trial court." *Id.* at 836. The court stated the discovery order was entered on the advice and recommendation of the capital litigation division of the Alabama Attorney General's office to reduce the likelihood of post-conviction litigation and reversal on *Brady* grounds.[6] "Many Alabama capital cases have been reversed in state and federal collateral proceedings for *Brady* problems. The order . . . is an attempt to prevent these two Alabama capital cases[7] from being set aside on *Brady* grounds." *Id.* at 837.

*Ex Parte Monk* is distinguishable from O'Reilly's case. The Alabama Supreme Court upheld the broad discovery order after recognizing that numerous Alabama capital cases have been reversed for *Brady* problems. O'Reilly does not assert a *Brady*

---

[6]The Supreme Court, in *Brady v. Maryland*, 373 U.S. 83 (1963), established that a prosecutor has a constitutional duty to disclose evidence favorable to the defendant.

[7]The trial judge entered two identical discovery orders in pending capital cases.

6

violation nor does he allege that cases decided under the Federal Death Penalty Act have been reversed on appeal due to discovery violations. Rather, O'Reilly's sole argument is that Rule 16, The Jencks Act, and 18 U.S.C. §3432 are unconstitutional in death penalty prosecutions.

### A. Rule 16 and The Jencks Act

The Court addresses these challenges together. Rule 16 simply states that discovery or inspection of statements made by prospective Government witnesses is not allowed except as provided in The Jencks Act. Hence, it is The Jencks Act that must be constitutionally analyzed.

The Supreme Court's decision in *Jencks v. United States*, 353 U.S. 657, 668-69 (1957), which held that a criminal defendant has a due process right to inspect prior statements of Government witnesses for impeachment purposes, was clarified and codified by Congress through the enactment of The Jencks Act.[8] O'Reilly acknowledges that The Jencks Act was enacted to protect Government witnesses,[9] but

---

[8] O'Reilly asserts that after the Supreme Court case, prosecutors were afraid that the advantage would switch to the defense because the courts would misinterpret the Supreme Court decision and allow the defense to "rummage through" their files. O'Reilly states that the "public outcry" led Congress to codify the *Jencks* decision, making sure to narrow it to the facts of the *Jencks* case. According to O'Reilly, the "sun was setting on the legislative session" and the bill was allowed to pass with a more reaching purpose on the last day Congress was in session.

[9] O'Reilly notes that the Rules Committee of the Federal Rules of Criminal Procedure recognized the Government's purpose for declining access to witnesses was over-emphasized. According to O'Reilly, the Rules Committee noted that a number of states, including Michigan, require the prosecutor to provide the defendant with a list of witnesses prior to trial, and the evidence indicates that these states have not experienced unusual problems with witness intimidation. Despite this, the Rules Committee still declined to extend protection beyond that provided in The Jencks Act.

argues that this reasoning is inapplicable in his case because he cannot do harm while incarcerated. He further argues that if the Government believes specific witnesses are at risk, it can petition the Court for assistance and withhold particular statements. The Court rejects these arguments.

First, although O'Reilly is incarcerated, witnesses must also be protected against those affiliated with O'Reilly. Second, withholding statements of witnesses the Government believes are at risk would completely negate O'Reilly's request. The Government could withhold all of its witnesses' statements by simply telling O'Reilly it believes all witnesses are all at risk.

Further, this Court rejects O'Reilly's argument that The Jencks Act is unconstitutional when applied in capital prosecutions. Notably, this argument has been considered and rejected by numerous courts. *See, e.g., United States v. Williams*, 181 F.Supp.2d 267, 295-96 (S.D.N.Y. 2001) ("[t]o the extent that the defendant's motions request an order pursuant to the Jencks Act requiring the Government to provide witness statements before such witnesses testify, they are denied"); *United States v. Rodriguez-Berrios*, 359 F.Supp.2d 34, 36 (D. Puerto Rico 2005) ("[d]efendants have provided no authority for the proposition that the clear mandates of the Jencks Act are to be modified merely because the instant case is an eligible death penalty case"); *United States v. Beckford*, 962 F.Supp. 780, 787 (E.D. Va. 1997) ("[a] district court may not order the disclosure of *Jencks* material[10] earlier than provided by statute")

---

[10]Jencks material includes:

(1) a written statement made by said witness and signed or otherwise adopted or approved by him; (2) a stenographic, mechanical, electrical, or

(emphasis in original).

The Jencks Act does not prohibit the Government from voluntarily providing witness statements earlier than required, and the Court declines to order the Government to produce such statements prior to the witness testifying on direct examination. *See Williams*, 181 F.Supp.2d at 296; *see also* 18 U.S.C. §3500. The Court notes that the Government has agreed to produce certain statements sooner, and that agreement has been memorialized in a court order. See Order of May 10, 2007.

### B. 18 U.S.C. §3432

O'Reilly asks this Court to declare 18 U.S.C. §3432 unconstitutional as applied to death penalty prosecutions. In support of his argument, O'Reilly states that the priorities of the People of the United States are "upside-down" because the highest priority in this country is freedom–not money–yet discovery in civil litigation is far more liberal than in criminal cases. *See* FRCP 26(a); *see also Tribbett*, 232 N.E.2d at 526 ("[w]e start with the premise that the truth is best revealed by a decent opportunity to prepare in advance of trial. We have embraced that tenet with respect to civil litigation, and absent overriding considerations, it should be valid in criminal matters."). O'Reilly states that 18 U.S.C. §3432 only allows three days for the defense to get the names of the witnesses, find them, interview them, and prepare to rebut the statements, if

---

    other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. §3500(e).

necessary. O'Reilly argues that it will take more than three days to interview the witnesses the Government intends to call.[11]

The starting point in every case involving construction of a statute is the language itself. *Watt v. Alaska*, 451 U.S. 259, 256-66 (1981). The language of 18 U.S.C. §3432 indicates that it only applies to capital prosecutions. Thus, this Court disposes of O'Reilly's argument that the statute is unconstitutional when applied to capital prosecution.

O'Reilly argues that the Government decides how much time is necessary to investigate the case by offering the names of the witnesses it intends to call 60 days before a firm trial date. Thus, according to O'Reilly, he is denied the right to prepare his defense as he sees fit. *People v. Pearson*, 569 N.E.2d 1334, 1338 (Ill. Ct. App. 1991) ("[t]he desirability of calling a witnesses, or at least interviewing him in preparation for trial, is a matter for the defendant rather than the State to decide.").

The statute requires the Government to produce a witness list in a capital prosecution three days before trial. The Government's sole responsibility is to comply with this requirement. However, it has gone beyond the scope of the statute by offering the names of the witnesses it intends to call 60 days in advance. The Court finds that O'Reilly is not entitled to further relief.

---

[11]O'Reilly mentions that the negative effects of not allowing a defendant adequate time to prepare his defense have been acknowledged by the Federal Death Penalty Resource Counsel. O'Reilly states that in an affidavit by Kevin McNally, he stated that in complicated capital defense cases, "[t]he ultimate responsibility rests on the lawyers' shoulders to talk to each witness with the potential to hurt or help. The amount of time this will take is considerably in excess of nine months." *United States v. Johnson*, CR-92-159-C, at 7.

10

**IV. CONCLUSION**

The Court **DENIES** O'Reilly's motion.

**IT IS ORDERED.**

                                                            s/Victoria A. Roberts
                                                             Victoria A. Roberts
                                                             United States District Judge

Dated: August 23, 2007

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 23, 2007.

s/Carol Pinegar
Deputy Clerk

---