**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

               **Plaintiff(s),**         **CASE NUMBER: 05-80025**
                                     **HONORABLE VICTORIA A. ROBERTS**

**v.**

**D-1 TIMOTHY DENNIS O'REILLY**,

               **Defendant(s).**
_____/

**ORDER**
(REGARDING DOCUMENT #222 AND #195)

## I.    INTRODUCTION

This matter is before the Court on Defendant Timothy O'Reilly's Amended Motion

to Dismiss the Prosecution's Request for the Death Penalty Based upon the

Unconstitutionality of 18 U.S.C. §3591 *et seq.* (Doc. #222).  Defendant O'Reilly

("O'Reilly") requests that this Court declare the Federal Death Penalty Act ("FDPA")

unconstitutional, strike the Government's Notice of Intent to Seek the Death Penalty

("Notice of Intent"), and bar application of the death-sentencing provision.  Watson

adopts this motion (Doc. #195).  Oral argument was heard on August 21, 2007.

O'Reilly's motion is **DENIED.**

## II.    OVERVIEW OF THE FEDERAL DEATH PENALTY ACT

In 1994, Congress enacted the FDPA,[1] which establishes procedures for

_____

[1] O'Reilly states the FDPA was passed in an "election year frenzy" without
committee hearings and only a few hours of floor debates.

1

imposing the death penalty. Under the FDPA, the Government must first serve a defendant with a Notice of Intent, specifying both the statutory and nonstatutory aggravating factors it intends to prove. 18 U.S.C. § 3593(a). The Government must then prove the defendant guilty of the underlying death-eligible crime beyond a reasonable doubt. In this case, the death-eligible crime is listed in Count Three (Premeditated Murder with a Firearm During and in Relation to a Violent Crime), in violation of 18 U.S.C. §924(j). If the jury finds the defendant guilty, the penalty phase begins. 18 U.S.C. §3593(b).

At the penalty phase,[2] the jury must find unanimously and beyond a reasonable doubt: (1) the defendant was 18 years of age or more at the time of the offense; (2) he had the requisite mental state when he committed the offense; and (3) at least one statutory aggravating factor exists.[3] 18 U.S.C. §§ 3591(a) and 3593(c). If the jury does not unanimously find that these requirements were proved beyond a reasonable doubt, the Court must impose a sentence other than death. 18 U.S.C. §3593(d). If the jury finds the Government met its threshold burden, the defendant is death-penalty eligible. 18 U.S.C. §3593(e). The jury is then allowed to consider nonstatutory aggravating

---

[2]O'Reilly describes the penalty phase as a separate trial where both sides may call witnesses and present "information."

[3]In this case, the Government's Notice of Intent lists the following statutory aggravating factors:

(1) Defendant, in the commission of the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense; §3592(c)(5)
(2) Defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of a thing of pecuniary value; §3592(c)(8)

factors along with statutory aggravating factors, and mitigating factors in its sentencing determination.  *Id.*

The defendant has the burden to establish the existence of any mitigating factor by a preponderance of the evidence.  18 U.S.C. §3593(c).  A finding with respect to a mitigating factor does not have to be unanimous.  Instead, any juror who finds the existence of a mitigating factor may consider such factor established for the purposes of the final weighing process.  18 U.S.C. §3593(d).  The final weighing process consists of the jury determining whether "all the aggravating factor or factors found to exist [whether statutory or nonstatutory aggravating factors] sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death."  18 U.S.C. §3593(e).

After weighing the factors, the jury votes and returns its findings.  The jury may recommend death, life imprisonment, or a lesser sentence, if it does so by a unanimous vote.  18 U.S.C. §3593(e).  A jury's recommendation of death is binding upon the court. Although §3593(e) uses the word "recommend" in describing the jury's decision to impose a death sentence, §3594 indicates that the court "shall" sentence in accordance with the jury's verdict.

Each juror is required to sign a certificate that its verdict was not influenced by the "race, color, religious beliefs, national origin, or sex of the defendant or any victim . . . ."  18 U.S.C. §3593(f).

If a death sentence is imposed, the defendant has the right to an appellate review.  The reviewing court must remand the case if the sentence of death was

"imposed under the influence of passion, prejudice, or any other arbitrary factor," or if the evidence fails to support the finding of an aggravating factor.  18 U.S.C. §3595.

## III.    ARGUMENTS AND ANALYSIS

### A.  FDPA is Unconstitutional on its Face and as a Whole

O'Reilly states that the constitutionality of the FDPA must be determined by examining the statute "on its face and as a whole."  *See Gregg v. Georgia*, 428 U.S. 153, 200 (1976); *Proffitt v. Florida*, 428 U.S. 242, 251 (1976) ("On their face these procedures . . . appear to meet the constitutional deficiencies identified in *Furman*."). According to O'Reilly, "on its face and as a whole," the FDPA has numerous constitutional deficiencies that cannot be cured by judicial construction.  *See United States v. Jackson*, 390 U.S. 570, 580 (1968) ("It is one thing to fill a minor gap in a statute-to extrapolate from its general design details that were inadvertently omitted.  It is quite another thing to create from whole cloth a complex and completely novel procedure and to thrust it upon unwilling defendants for the sole purpose of rescuing a statute from a charge of unconstitutionality.").

For the following reasons, the Court finds that the FDPA is not unconstitutional on its face.

### B.  Nondelegation Doctrine

O'Reilly argues that the FDPA violates the nondelegation doctrine by allowing the prosecution to define and arbitrarily choose as many nonstatutory aggravating factors as it deems appropriate without an intelligible principle.  O'Reilly states this is especially harmful in his case because the Government does not limit its nonstatutory aggravating

factors to past conduct but invites the jury to speculate upon possible future conduct.

The nondelegation doctrine arises from the constitutional principle of separation of powers. Article I, §1 provides that "All legislative Powers herein granted shall be vested in a Congress of the United States . . . ." *See Mistretta v. United States*, 488 U.S. 361, 371 (1989) ("The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government."). Under the nondelegation doctrine, Congress may not constitutionally delegate its legislative power to another branch of government, but may seek aid from coordinate branches of government. *Id.* at 371-72. Delegation of legislative power is permissible "[s]o long as Congress formulates 'an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform . . .'" *United States v. Jones*, 132 F.3d 232, 239 (5th Cir. 1998) (citing *Mistretta*, 488 U.S. at 372).

The court in *Jones* emphasized that the prosecution could constitutionally define the nonstatutory aggravating factors to include in a death-penalty case. The prosecution is circumscribed by four factors that form an "intelligible principle" and adequately limits prosecutorial power. First, the scope of nonstatutory aggravating factors is limited to those in which the prosecution gave prior notice to the defendant. *Jones*, 132 F.3d at 240 (citing 18 U.S.C. §3593(a)). Second, "the death penalty jurisprudence devised by the Supreme Court guides the prosecution in formulating nonstatutory aggravating factors." *Id.* at 240. As an example, the Court states that due process requires that information submitted as aggravating must genuinely narrow the class of persons eligible for the death penalty. *Id.* (citing *Zant v. Stephens*, 462 U.S. 862, 877 (1983)). Third, the district court retains its function as "gatekeeper" and limits

information that is useless and impermissibly prejudicial. *Id.* (citing 18 U.S.C. §3593(c)). Fourth, the jury must find at least one statutory aggravating factor beyond a reasonable doubt before it can even consider nonstatutory aggravating factors. *Id.* (citing 18 U.S.C. §3593(d)).

Thus, a prosecutor's power to define and include nonstatutory aggravating factors is not without an intelligible principle. Instead, the prosecution must act within congressionally mandated and court-imposed constraints. *See United States v. Paul*, 217 F.3d 989, 1003 (8th Cir. 2000) (finding the factors listed in *Jones* sufficiently provided the prosecution with "intelligible principles.").

If Congress listed every possible aggravating factor, a prosecutor's hands would be bound in deciding whether to pursue the death penalty. *Jones*, 132 F.3d at 239. Further, several courts have rejected this same argument that O'Reilly makes here. *See e.g., United States v. Higgs*, 353 F.3d 281, 321-22 (4th Cir. 2003); *United States v. Allen*, 247 F.3d 741, 758-59 (8th Cir. 2001); *Paul*, 217 F.3d at 1003.

The Court finds that the "authority to define nonstatutory aggravating factors falls squarely within the Executive's broad prosecutorial discretion." *See Jones*, 132 F.3d at 239.

### C. Improper Weighing of Nonstatutory Aggravators

Relying on *Zant v. Stephens*, 462 U.S. 862 (1983), O'Reilly argues that the FDPA is unconstitutional because it improperly authorizes the weighing of nonstatutory aggravating factors. In describing the capital punishment scheme in *Zant*, O'Reilly states the sentencer may consider any nonstatutory aggravating factors and all mitigating factors, but could only impose the death penalty if it first found the existence

6

of at least one of ten statutory aggravating factors. O'Reilly argues that while *Zant* seems to stand for the proposition that nonstatutory aggravating factors may be considered by the jury at the penalty phase, the Court's holding must be confined to non-weighing capital punishment schemes. O'Reilly claims that based on *Zant*, the FDPA is unconstitutional because a jury weighing both statutory and nonstatutory aggravating factors–on the one hand–and mitigating factors on the other, could impose the death penalty without basing the decision on a statutory factor. According to O'Reilly this is so because the statutory aggravating factors do not serve the requisite narrowing function.

The Supreme Court in *Zant* considered whether to vacate a death sentence because one of the three statutory aggravating factors upon which the jury relied in reaching its decision was later declared unconstitutional. *Zant*, 462 U.S. at 864. The Supreme Court upheld the sentence, since the remaining two statutory aggravating factors remained valid. *Id.* at 879-80. The jury was permitted to base its decision to impose the death penalty on a single statutory aggravating factor. *Id.* at 872-73, 890-91.

Contrary to O'Reilly's contention, the FDPA does not permit a jury to recommend a death sentence by relying solely on nonstatutory factors. If the Government intends to seek the death penalty, it must provide notice of such intent "setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death." 18 U.S.C. §3593(a)(2). After a sentencing hearing, the jury "shall return special findings identifying any aggravating factor or factors set forth in section 3592 found to exist and any other aggravating factor

for which notice has been provided under subsection (a) found to exist." 18 U.S.C. §3593(d). Hence, similar to the death penalty scheme in *Zant*, the FDPA prohibits the jury from recommending the death penalty unless at least one of the statutory aggravating factors is first found beyond a reasonable doubt. The weighing of the nonstatutory and statutory aggravating factors–on the one hand–and the mitigating factors on the other hand does not occur until this finding is made. If the jury does not find the existence of a statutory aggravating factor, "the court shall impose a sentence other than death authorized by law." 18 U.S.C. §3593(d).

The Court holds that the FDPA does not permit the jury to recommend the death sentence solely on nonstatutory factors.

### D.    Class of Death-Eligible Defendants

"[W]here discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Zant*, 462 U.S. at 874 (quoting *Gregg*, 428 U.S. at 189)). The narrowing function of a capital punishment scheme may be provided in either of two ways: "The legislature may itself narrow the definition of capital offenses . . . so that the jury finding of guilt responds to this concern, or the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating [factors] at the penalty phase." *Lowenfield v. Phelps*, 484 U.S. 231, 246 (1988). In codifying the FDPA, Congress chose the later option. The FDPA defines capital offenses broadly, but specifies a limited number of aggravating factors that make the death penalty appropriate. This choice is appropriate as long as the aggravating factors "genuinely

8

narrow the class of persons eligible for the death penalty and . . . reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant*, 462 U.S. at 877.

O'Reilly argues that the FDPA fails to narrow the broad category of defendants convicted of intentional murder to a smaller class of murderers subject to capital punishment. O'Reilly offers two reasons to support his argument: (1) the §3591--preliminary threshold "intent" factors--are an overly-broad restatement of the constitutionally required mental state necessary for execution; and (2) the list of statutory aggravating factors do not perform their requisite "narrowing function." According to O'Reilly, this improperly places the "prosecution's thumb on the scales in favor of a death sentence." *See Stringer v. Black*, 503 U.S. 222, 232 (1992).

As to the preliminary threshold "intent" factors, the Supreme Court ruled that the death penalty may be imposed only on those who possess a sufficiently culpable mental state. *Enmund v. Florida*, 458 U.S. 782, 797 (1982) (holding that the Eighth Amendment bars imposition of the death penalty upon a felony-murder defendant absent a finding that he personally killed, attempted to kill, or intended that a killing take place or that lethal force would be employed); *Tison v. Arizona*, 481 U.S. 137, 158 (1987) (holding that major participation in the felony offense, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement). Congress provided four preliminary threshold "intent" factors in the FDPA. They include:

(A) [the defendant] intentionally killed the victim;
(B) [the defendant] intentionally inflicted serious bodily injury that resulted in the death of the victim;

> (C) [the defendant] intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or
> (D) [the defendant] intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.

18 U.S.C. §3591(a). This limits the range of mental states that qualifies a murder defendant for capital punishment, satisfies the mandates of *Enmund* and *Tison*, and narrows the field of death penalty candidates. At the same time, it ensures that only those who act with the direct intention to take a life or who use violence with a reckless disregard of its consequences are eligible for the death penalty. *United States v. Gooch*, 2006 WL 3780781, at *4 (D.D.C. Dec. 20, 2006) (citing *United States v. Flores*, 63 F.3d 1342, 1371-72 (5th Cir. 1995); *United States v. Cooper*, 91 F.Supp.2d 90, 96-97 (D.D.C. 2000); *United States v. Kaczynski*, 1997 WL 716487, at *17 (E.D. Cal. Nov. 7, 1997); *United States v. Nguyen*, 328 F.Supp. 1525, 1539 (D. Kan. 1996)). Further, these are not aggravating factors to be weighed against mitigating factors, "[b]ut rather serve[] as a preliminary qualification threshold." *United States v. Webster*, 162 F.3d 308, 355 (5th Cir. 1998).

As to the statutory aggravating factors, the Court agrees with the weight of authority that the FDPA's statutory aggravating factors perform their required function of distinguishing those deserving of death from those who are not. The statutory aggravating factors elevate an offense of murder above the single fact of death to a truly "aggravated" level. *See, e.g., United States v. Le*, 327 F.Supp.2d 601, 609 (E.D. Va. 2004) ("These FDPA [statutory] aggravating factors provide objective criteria that cannot

reasonably be interpreted to apply to all federal capital crimes") (citing *United States v. Llera Plaza*, 179 F.Supp.2d 444, 451-52 (E.D. Pa. 2001); *United States v. Minerd*, 176 F.Supp.2d 424, 441 (W.D. Pa. 2001).

The FDPA narrows the class of death-eligible defendants at two different points of the penalty phase. First, the jury must already have found that O'Reilly acted with at least one of the four preliminary threshold "intent" factors. Second, the jury is required to find at least one statutory aggravating factor under section 3592 before proceeding to balance aggravating and mitigating factors. *See e.g., Jones*, 132 F.3d at 248-49 (holding that the FDPA narrows the jury's discretion through the findings of preliminary threshold "intent" factors and statutory aggravating factors); *Cooper*, 91 F.Supp.2d at 96-97 (finding that the FDPA preliminary threshold "intent" factors and statutory aggravating factors narrow the class of federal murders eligible for the death penalty).

Also, see Order on Doc. #187 and #204.

### E.    Proportionality Review

Proportionality review "purports to inquire . . . whether the penalty is . . . unacceptable in a particular case because disproportionate to the punishment imposed on others convicted of the same crime." *Pulley v. Harris*, 465 U.S. 37, 43 (1984).

O'Reilly claims that the FDPA is facially unconstitutional because it does not require the useful safeguard of a proportionality review of a death sentence. O'Reilly acknowledges that the Supreme Court held the Eighth Amendment does not require state courts to conduct such a review. *See Pulley*, 465 U.S. at 43-44. Yet, O'Reilly asserts such review is required when a death penalty scheme allows a jury to weigh nonstatutory aggravating factors in deciding whether to impose a death sentence.

11

The Court is not persuaded by O'Reilly's attempt to distinguish *Pulley* because it did not deal with a death penalty scheme involving nonstatutory aggravating factors. "[T]he Constitution does not require comparative proportionality review in every capital case, but only that the death penalty not be imposed arbitrarily or capriciously." *Jones*, 132 F.3d at 240 (citing *Pulley*, 465 U.S. at 49-50 and holding that "the Constitution does not mandate proportionality review when the capital sentencing scheme permits the jury to consider nonstatutory aggravating factors as long as the statute provides for other safeguards against an arbitrary imposition of the death penalty"); *see also Allen*, 247 F.3d at 760 (holding "the FDPA has sufficient safeguards–notably the requirements that a jury find beyond a reasonable doubt the existence of one statutory aggravating factor and at least one of four requisite levels of specific intent on the part of a defendant, not to mention various other procedural protections–such that proportionality review is not required in order for the FDPA to pass constitutional muster.").

Accordingly, this Court rejects O'Reilly's claim that the FDPA is unconstitutional because it does not require proportionality review.

**F.     Ex Post Facto Clause**

Article I, Section 9 of the United States Constitution provides that "No . . . ex post facto Law shall be passed."

"The Ex Post Facto Clause is implicated by laws that retroactively alter the definition of crimes, increase the punishment for criminal acts, or deprive a defendant of a defense available at the time that the crime was committed."  *United States v. Frank*, 8 F.Supp.2d 253, 267 (S.D.N.Y. 1998) (citing *Cal. Dep't of Corr. v. Morales*, 514 U.S.

12

499, 504 (1995); *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925)).  The Supreme Court held that procedural changes in a capital sentencing scheme do not implicate the Clause.  *Dobbert v. Florida*, 432 U.S. 282, 293-94 (1977).

O'Reilly argues that the FDPA violates the Ex Post Facto Clause because it "permits the Government to define, create if you will, aggravating circumstances to be applied retroactively to crimes committed before the circumstances are articulated."

This argument has been found meritless by numerous courts.  *United States v. Cheever*, 423 F.Supp.2d 1181, 1207 (D. Kan. 2006) (citing *Higgs*, 353 F.3d at 321-22; *Allen*, 247 F.3d at 759; *United States v. Regan*, 228 F.Supp.2d 742, 749 (E.D. Va. 2002); *Llera Plaza*, 179 F.Supp.2d at 456; *United States v. McVeigh*, 944 F.Supp. 1478, 1486 (D. Colo. 1996)); *see also Frank*, 8 F.Supp.2d at 267 ("In individualizing the sentencing decision, the jury's attention is necessarily directed to facts that come into existence with the commission of the crime.  This is an essential feature of all sentencing and does not violate the Ex Post Facto Clause.").

The prosecution does not rewrite the elements of the crime when it identifies nonstatutory factors.  Similarly, the use of nonstatutory factors does not increase the punishment for the crime.  *See Poland v. Arizona*, 476 U.S. 147, 156 (1986) ("Aggravating circumstances are not separate penalties or offenses, but are 'standards to guide the making of [the] choice' between the alternative verdicts of death and life imprisonment") (quoting *Bullington v. Missouri*, 451 U.S. 430, 438 (1981)).

The Court finds that the Ex Post Facto clause is not implicated in O'Reilly's case.

**G.     O'Reilly's Right to Present Mitigating Evidence under the FDPA**

**1.  Restrictive Statutory Language**

O'Reilly argues that the FDPA limits the mitigating evidence that he can offer at the sentencing phase of the trial. O'Reilly points to "restrictive" language contained in the mitigating factors defined in 18 U.S.C. §3592(a), including "significantly" impaired, "substantial" duress, "relatively" minor, "significant" impairment and "severe" mental or emotional disturbance. O'Reilly argues that this "restrictive" language prohibits the jury from considering whether defendant suffered from minor impairment in his ability to conform his conduct to the requirements of the law or whether the defendant was under duress that was less than substantial duress.

Section 3592(a) states that the finder of fact "shall consider *any* mitigating factor." (Emphasis added). In addition to the seven factors listed in §3592(a), which O'Reilly cites as "restrictive," the FDPA provides a "catch-all" provision under which O'Reilly is permitted to introduce "[o]ther factors in [his] background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence." *United States v. Henderson*, 485 F.Supp.2d 831, 853 (S.D. Ohio 2007).

O'Reilly fails to show how the FDPA prevents him from presenting mitigating evidence. *See Henderson*, 485 F.Supp.2d at 853 (finding that section 3592(a) of the FDPA does not limit a defendant's right to present mitigating evidence). And, the Court finds unpersuasive O'Reilly's argument that the "catch-all" provision is improper because the jury will discount any mitigating factors included under this provision as not deserving of specific mention.

### 2. Restriction on Mitigating Evidence

O'Reilly also contends that 18 U.S.C. §3593(f) limits the mitigating evidence he may produce because that section requires the Court to give the following jury

instruction:

> in considering whether a sentence of death is justified, [the jury] shall not consider the race, color, religious beliefs, national origin, or sex of the defendant or of any victim and that the jury is not to recommend a sentence of death unless it has concluded that it would recommend a sentence of death for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant or of any victim may be.

O'Reilly argues that this instruction prohibits him from offering any relevant evidence "related to" the race, color, religious beliefs, national origin, or sex of the defendant or the victim that might tend to bear on whether or not the jury would impose a death sentence. O'Reilly states this restriction violates his Fifth and Eighth Amendment rights to offer "[a]ny aspect of [his] character or record and any of the circumstances of the offense that [he] proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978).

The Court concludes that neither the Constitution nor the FDPA prevents the jury from considering the "effects and experiences" of the protected factors found within §3593(f).

> [A]lthough race *per se* is an irrelevant and inadmissible factor, the *effects* and *experiences* of race may be admissible [during sentencing]. If a defendant can show that his life has been marked by discrimination or some other set of experiences . . . then that properly might be admissible as relevant mitigating background or character evidence. But this is a far cry from using race in and of itself as a proxy for such a set of beliefs and experiences. Pigmentation does not define a person's character or background; the life that a person has led and the things that he has experienced do.

*Webster*, 162 F.3d at 356-57 (emphasis in original). Thus, "the FDPA complies with the constitutional mandate that race be irrelevant during sentencing, while at the same time permitting the jury to hear mitigating evidence concerning the defendant's experiences

15

resulting from his race, color, religion, national origin or gender, and the effect those experiences had on his life." *Cooper*, 91 F.Supp.2d at 102.

**H.     Standard for Balancing Aggravating and Mitigating Factors**

If a jury finds the Government proved one or more statutory aggravating factors beyond a reasonable doubt, its next step is to "consider whether the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death."  18 U.S.C. §3593(e).  According to O'Reilly, the FDPA is unconstitutional because it fails to provide a standard for the jury to employ when balancing aggravating and mitigating factors.  O'Reilly states that one juror might weigh the factors by counting the number of mitigating factors versus the number of aggravating factors, and the side with the most wins.  Another juror might weigh the persuasiveness of the aggravating and mitigating factors, which is the proper method.

The Court rejects this argument.  In *Tuilaepa v. California,* 512 U.S. 967, 979 (1994)*,* the Supreme Court held "[a] capital sentencer need not be instructed how to weigh any particular fact in the capital sentencing decision."

Noteworthy, other courts addressing this claim rejected it.  *See e.g., Henderson*, 485 F.Supp.2d at 854; *Gooch*, 2006 WL 3780781, at *15.

Also, see Order on Doc. #190.

**I.     Aggravators Must Outweigh Mitigators Beyond a Reasonable Doubt**

O'Reilly argues that after *Ring v. Arizona*, 536 U.S. 584 (2002), the weighing process equates to a "finding of fact" that the prosecution is required to prove beyond a

reasonable doubt.  The Court rejects this argument.

O'Reilly's intent at the time of the alleged crime and the determination of whether any statutory aggravating factor exists, are determinations of fact which must be decided by a jury.  However, unlike preliminary threshold "intent" factors and statutory aggravating factors, the jury's weighing process does not involve "any finding of fact." Rather, this process is a "consideration" of whether a sentence of death is justified in light of the factors of the case.  *See United States v. Purkey*, 428 F.3d 738, 750 (8th Cir. 2005) ("[i]t makes no sense to speak of the weighing process . . . as an elemental fact for which a grand jury must find probable cause.  In the words of the statute, it is a "consideration . . . .").

Further, the plain language of the FDPA suggests that the only burden Congress intended to impose was that the Government must prove that the aggravating factors "sufficiently outweigh" any mitigating factors.  *See e.g., United States v. Sampson*, 335 F.Supp.2d 166, 237 (D. Mass. 2004) ("The text of the FDPA does not indicate that Congress intended to impose a reasonable doubt requirement on the weighing process") (citing *United States v. Chandler*, 996 F.2d 1073, 1091-93 (11th Cir. 1993)); *United States v. Hammer*, 25 F.Supp.2d 518, 531 (M.D. Pa. 1998) ("Congress clearly identified the standard [sufficiently outweigh] to be used in the weighing process, and by so doing excluded other standards, specifically the reasonable doubt standard.").

The reasonable doubt standard is used in other provisions of the FDPA, further suggesting that Congress intentionally omitted "reasonable doubt" from the weighing process.  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of

the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

**J.     Appellate Review under the FDPA**

O'Reilly contends that the FDPA violates his Fifth Amendment due process and equal protection rights by arbitrarily and capriciously ignoring the need for meaningful appellate review in capital cases.  O'Reilly argues that Congress singles out federal death-row prisoners for diminished review, but leaves open existing remedies to all other federal prisoners.  According to O'Reilly, failing to provide for meaningful appellate review prohibits a necessary check on possible arbitrary and capricious infliction of the death penalty and does not comport with the required "heightened concern for fairness and accuracy" required in death penalty cases.  *See Clemons v. Mississippi*, 494 U.S. 738, 749 (1990) ("[T]his Court has repeatedly emphasized that meaningful appellate review of death sentences promotes reliability and consistency.").

Citing 18 U.S.C. §3595, O'Reilly states the FDPA limits the scope of appellate review to two narrow areas: (1) evidentiary sufficiency of aggravating and mitigating factors; and (2) whether passion, prejudice or other arbitrary factors were in play. O'Reilly argues that there is no way to demonstrate passion or prejudice from a trial record.  Jury deliberations are ordinarily secret and, absent an event so grossly inappropriate that a mistrial would result, any record would be devoid of evidence of passion or prejudice.  Further, O'Reilly states that many districts have a rule which prohibits post-trial interviews for jurors, thereby restricting the appellant's ability to determine passion or prejudice.  O'Reilly argues that mistakes can be committed in a death penalty trial which would not fall within the statute's appellate power.  As an

example, O'Reilly states the trial court could err as a matter of law in instructing the jury, but the verdict will stand unless the error could be accurately described as "the influence of passion, prejudice, or any other arbitrary fact . . . ."

As an initial matter, O'Reilly has yet to be tried, let alone convicted. His challenge to the FDPA on appellate issues is unripe. *Llera Plaza*, 179 F.Supp.2d at 461.

However, even if the argument was ripe, the Court finds that the FDPA provides for meaningful appellate review. Meaningful appellate review ensures that the death penalty is not imposed arbitrarily or irrationally. *Parker v. Dugger*, 498 U.S. 308, 321 (1991). The appellate review provisions in section 3593 satisfy this requirement.

Section 3595(a) expressly allows a defendant the right to appellate review. Section 3595(b) requires a reviewing appellate court to "review the entire record" of the capital trial and sentencing proceedings. Section 3595(c) mandates that appellate courts "address all substantive and procedural issues raised on the appeal of a sentence of death." This section also requires that the case be remanded if the court determines that the sentence "was imposed under the influence of passion, prejudice, or any other arbitrary factor" or that the evidence failed to "support the special finding of the existence of a [statutory] aggravating factor." Section 3595(c)(2)(C) also provides that an appellate court "shall remand" if it finds that the proceedings "involved any other legal error requiring reversal of the sentence that was properly preserved for appeal under the rules of criminal procedure." Thus, under section 3595, "[t]he federal procedure for review of a sentence of death is exhaustive." *United States v. Davis*, 904 F. Supp. 554, 563 (E.D. La. 1995).

Further, Fed. R. Crim. P. 52(b) independently preserves for consideration on appeal "A plain error that affects substantial rights even though it was not brought to the court's attention." *See Jones v. United States*, 527 U.S. 373, 388 (1999) (reviewing claimed error in penalty phase jury instructions to which no objection was taken under plain error review.).

## K.      Evidentiary Standard under the FDPA

O'Reilly argues that the FDPA ignores the fact that the Supreme Court repeatedly recognized in capital cases that "death is different," and requires heightened–not relaxed–standards of reliability. *See Woodson v. North Carolina*, 428 U.S 280, 305 (1976); *Lowenfield*, 484 U.S. at 238-39 (the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed) (quoting *Lockett*, 438 U.S. at 604); *Murray v. Giarratano*, 492 U.S. 1, 8 (1989) ("the Constitution places special constraints on the procedures used to convict an accused of a capital offense and sentence him to death. The finality of the death penalty requires "a greater degree of reliability" when it is imposed.").

O'Reilly maintains that the FDPA features evidentiary standards which diminish the degree of reliability of any penalty trial. O'Reilly points to section 3593(c) which authorizes the parties to present "information" rather than "evidence" during the sentencing phase "regardless of its admissibility under the rules governing admission of evidence at criminal trials." O'Reilly states the statute attempts to delete the Confrontation clause from the Constitution and permit a sentence of death "without even the circumstantial guarantees of accuracy embodied in the hearsay rules of the Federal Rules of Evidence." O'Reilly cites *United States v. Fell*, 217 F.Supp.2d 469 (D. Vt.

20

2002) to support his position that the statute is unconstitutional.  This case was vacated by *United States v. Fell*, 360 F.3d 135 (2nd Cir. 2004), which held:

> [w]hile it is true that the [Federal Rules of Evidence ("FRE")] are inapplicable to death penalty sentencing proceedings under the FDPA, the FRE are not constitutionally mandated.  Indeed, the FRE are inapplicable in numerous contexts, including ordinary sentencing proceedings before a trial judge.  Moreover, the FDPA does not alter a district court's inherent obligation to exclude evidence the admission of which would violate a defendant's Constitutional rights.  The admissibility standard set forth in §3593(c) of the FDPA provides one means of complying with this responsibility.

*Id.* at 137-38.

Further, numerous courts have declined to accept a defendant's relaxed evidentiary standard argument.  *See., e.g., Allen*, 247 F.3d at 759-60; *Minerd,* 176 F.Supp.2d at 435-36; *Cooper*, 91 F.Supp.2d at 97-98; *Frank*, 8 F.Supp.2d at 268-70.

The FDPA provides that a trial court may exclude any information offered at sentencing if "its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."  18 U.S.C. §3593(c).  According to O'Reilly, this provision is irrelevant because the FDPA still provides an evidentiary "free-for-all" at the penalty phase, subject only to the standard of exclusion embodied in FRE 403.

The Court directs the parties to its Order on Document 193, "Evidentiary Standard at Penalty Phase, " for disposition of this issue.

## L.    Vague Aggravating Factors

O'Reilly contends that the "use of a vague or imprecise aggravating factor in the weighing process invalidates the sentence and at the very least requires constitutional harmless-error analysis or reweighing in the state judicial system." *Stringer*, 503 U.S. at

236.  Based on the litigation regarding whether the "especially heinous" aggravating factor[4] was vague, O'Reilly argues the "grave risk of death" aggravating factor must be dismissed as vague.  O'Reilly states that "an aggravating [factor] must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder."  *Zant*, 462 U.S. at 877.

According to O'Reilly, the "grave risk of death" aggravating factor is too vague to place any meaningful limitation on the application of the statute and is so broad that it covers virtually every first-degree murder.  O'Reilly argues that an ordinary person might honestly believe that any criminal conduct could create a grave risk of death to another person.

Whether a factor is vague is determined by assessing whether its definition provides adequate direction to the sentencer.  *United States v. Johnson*, 136 F.Supp.2d 553, 558 (W.D. Va. 2001); *see also United States v. McCullah*, 76 F.3d 1087, 1110 (10th Cir. 1996) ("[a]n aggravating factor may be unconstitutionally vague if it 'leaves the sentencer without sufficient guidance for determining the presence or absence of the factor.'") (quoting *Espinosa v. Florida*, 505 U.S. 1079, 1081 (1992)).  Aggravating factors must "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" *Lewis v. Jeffers*, 497 U.S. 764, 774 (1990) (quoting *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980)).

---

[4]This factor is inapplicable in O'Reilly's case.

"Mathematical precision" is not possible in defining aggravating factors so a vagueness review should be "quite deferential."  *See Tuilaepa v. California*, 512 U.S. 967, 973 (1994).

The United States Supreme Court concluded that a similar aggravating circumstance--that a defendant created a "great risk of death" to additional persons--is not void for vagueness.  *Proffitt*, 428 U.S. at 256; *see also Brecheen v. Reynolds*, 41 F.3d 1343, 1360-61 (10th Cir. 1994).  Vagueness is evaluated on the words used to define the aggravator and on the construction given by the courts.  *See Brecheen*, 41 F.3d at 1361.  The construction of an aggravating factor is reflected largely by the jury instructions relating to that factor.  *See United States v. Barnette*, 211 F.3d 803, 819 (4th Cir. 2000).  The Court concludes that the parties and the Court can draft jury instructions that will adequately define "grave risk" for the sentencer.  *See Cheever*, 423 F.Supp.2d at 1202-03.

Also, see Order on Doc. #187 and #204.

**M.    Rebuttal During Sentencing**

O'Reilly argues that 18 U.S.C. §3593(c) violates his right to due process of law, effective assistance of counsel, and reliability in the sentencing determination by permitting the Government to have the "first and last word" at the penalty phase. According to O'Reilly, under the "heightened standard of reliability," he is required to have the final closing argument to the jury.  O'Reilly also argues that he should have both advantages to avoid any presumption in favor of death.

The FDPA says "[t]he government shall open the argument.  The defendant shall be permitted to reply.  The government shall then be permitted to reply in rebuttal."  18

U.S.C. §3593(c). The FDPA is consistent with federal practice and Fed. R. Crim. P. 29.1 which provides, "Closing arguments proceed in the following order: (a) the government argues; (b) the defense argues; and (c) the government rebuts." "'Rule 29.1 does not establish a constitutional doctrine, but rather, provides a uniform rule of federal practice.'" *United States v. Garcia*, 94 F.3d 57, 63 (2nd Cir. 1996).

The Government has the burden to prove aggravating factors beyond a reasonable doubt. Hence, the Court finds the federal practice set forth in §3593(c) is appropriate.

### N.      Adoption of Jury's Verdict

O'Reilly argues that the FDPA is unconstitutional because it requires the trial judge to follow the jury's verdict for death, without the "crucial protection" of a "judicial override." According to O'Reilly, a binding decision by the jury violates the principles set out in *Furman v. Georgia*, 408 U.S. 238 (1972), that a jury cannot have the discretion to sentence a defendant to death in such a way as to violate the Equal Protection Clause. O'Reilly contends the trial judge is helpless to "fix" an improper jury verdict.   For example, O'Reilly states that under the FDPA, juries can recommend a sentence other than death for Caucasian defendants, while sentencing minority defendants to death. O'Reilly states the judge must "sit on his hands" even though he suspects sentencing based on racial or other impermissible lines.

Section 3594 provides:

Upon a recommendation under section 3593(e) that the defendant should
be sentenced to death or life imprisonment without possibility of release,
the court shall sentence the defendant accordingly.  Otherwise, the court
shall impose any lesser sentence that is authorized by law.
Notwithstanding any other law, if the maximum term of imprisonment for

the offense is life imprisonment, the court may impose a sentence of life imprisonment without possibility of release.

Under §3594, therefore, a jury's recommendation is binding on the court. *United States v. Sampson*, 275 F.Supp.2d 49, 61 (D. Mass. 2003).

The Supreme Court has expressed a preference for jury sentencing in capital cases. *See Gregg*, 428 U.S. at 193-94; *Witherspoon v. Illinois*, 391 U.S. 510, 519 n.15 (1968). In addition, the FDPA provides for meaningful appellate review in case of error at the trial court level, as discussed above.

The FDPA is not unconstitutional because it requires the trial judge to follow a jury's verdict for death.

### O.    FDPA under the Eighth Amendment

O'Reilly asks this Court to invalidate the FDPA on the ground that the death penalty is cruel and unusual punishment, in violation of the Eighth Amendment. He recognizes that this claim is foreclosed by the Supreme Court, but argues that societal standards of decency have evolved to the point that imposing the death penalty has become an intolerably cruel act. O'Reilly argues the death penalty is unconstitutional for the following reasons: (1) it is racist (O'Reilly indicates that African-Americans make up 12% of the general population, but 57% of the federal death row inmates); (2) it will lead to the execution of innocent people (this argument was addressed in a separate motion); (3) the process by which individuals are selected for capital prosecution is defective; and (4) evolving standards of decency will eventually convince the American public that it is simply unproductive, unnecessary, wrong, and immoral to kill citizens.

O'Reilly presents no evidence of an evolution in societal standards of decency.

And, while the Court may think there is a shift in the national attitude concerning capital punishment, the Supreme Court decided this issue and found that imposing the death penalty as a punishment for murder is not unconstitutional *per se*:

> [W]e are concerned here only with the imposition of capital punishment for the crime of murder, and when a life has been taken deliberately by the offender, we cannot say that the punishment is invariably disproportionate to the crime . . . . We hold that the death penalty is not a form of punishment that may never be imposed, regardless of the circumstances of the offense, regardless of the character of the offender, and regardless of the procedure followed in reaching the decision to impose it.

*Gregg*, 428 U.S. at 187.

If the Supreme Court has directly decided an issue, the lower courts must reach the same result "unless and until [the] Court reinterpret[s] the binding precedent." *Agostini v. Felton*, 521 U.S. 203, 238 (1997). Thus, this Court has no authority to declare the FDPA unconstitutional as cruel and unusual punishment.

### 1. Infrequency and Arbitrariness in the FDPA's Application

O'Reilly argues that the FDPA is so broad that it could theoretically cover everything from a deadly barroom fight to the acts of a demented serial killer. However, the use of the death penalty as a punishment has "statistically declined decade after decade." O'Reilly mentions a statistical survey by the Department of Justice where 682 cases were submitted to the Attorney General for review, but the death penalty was only authorized for 159 defendants. According to O'Reilly, the federal government has only carried out three executions between 2001 and 2007, on only a fraction of the eligible crimes committed within that time period. O'Reilly states that "[w]hen the punishment of death is inflicted in a trivial number of the cases in which it is legally available, the

conclusion is virtually inescapable that it is being inflicted arbitrarily. Indeed, it smacks of little more than a lottery system." *Furman*, 408 U.S. at 293.

A prosecutor has "wide discretion" in its decision to seek the death penalty. *McClesky v. Kemp*, 481 U.S. 279, 296-97 (1987). The mere fact that the death penalty is rarely sought, or even more rarely imposed, does not of itself render the FDPA unconstitutional. *Sampson*, 275 F.Supp.2d at 88 (citing *United States v. O'Driscoll*, 203 F.Supp.2d 334, 341 (M.D. Pa 2002); *Hammer*, 25 F.Supp.2d at 546-47).

The Court finds that the FDPA scheme is not unconstitutional on this basis.

## 2. Randomness in the FDPA's Application

O'Reilly argues that the FDPA violates his Eighth Amendment right because it fails to provide a way to determine why the death penalty is authorized in some cases but not in others. O'Reilly states he is subject to execution, yet defendants who allegedly commit multiple murders are not.[5] According to O'Reilly, whether a case is determined to be a Federal rather than a State prosecution and the selection process

---

[5]O'Reilly cites the following cases as examples of cases that did not receive the death penalty:

(1) Villenas-Reyes, Duque, Rosser, Smith and Goicochea-Perez (N.D. Ga) - five RICO gun muerders of drug dealers;
(2) Jones, Summers, Fellows and Summers (N.D. OK) - four RICO gun murders by the "Hoover Crips" gang;
(3) Chen, Nguyen, Nguyen and Nagatsutka (SD NY) - three murders during course of heroin conspiracy;
(4) Dubose and Bohannon (SD AL) - carjacking gun murder. Death with baseball bat;
(5) Hunter and Payne (ED NY) - five RICO drug murders;
(6) Villafan (ED CAL) - five RICO murders by the "Pitch Dark Family";
(7) Rodriguez, Holguin, Cardenas, Amaya and Armenta (CD CA) - 2004 drug-related RICO gun murder by "West Myrtle criminal street gang";
(8) Durand, Johnson and Lash (ED LA) - crack cocaine conspiracy alleging death of government informant.

27

within the federal system is so haphazard that being selected for possible execution is akin to being "struck by lightning." *See Furman*, 408 U.S. at 309 ("These death sentences are cruel and unusual in the same way that being struck by lightning is cruel and unusual.").

"The Constitution is not offended by inconsistency in results based on the objective circumstances of the crime. Numerous legitimate factors may influence . . . a defendant's ultimate sentence, even though they may be irrelevant to his actual guilt." *Kemp*, 481 U.S. at 307 n.28.

The Court finds the FDPA is not unconstitutional on this basis.

### 3. Serves no Legitimate Penological Purpose

O'Reilly states that a capital punishment scheme is constitutional if it serves six possible purposes: (1) retribution; (2) deterrence; (3) prevention of repetitive criminal acts; (4) encouragement of guilty pleas and confessions; (5) eugenics; and (6) economy. *Furman*, 408 US at 238. O'Reilly argues the FDPA violates the Eighth Amendment because it does not serve any of these purposes.

O'Reilly fails to provide authority in support of his view. Absent such authority, the Court is unwilling to consider striking down an Act of Congress that has consistently withstood Eighth Amendment constitutional challenges. *See e.g., Higgs*, 353 F.3d 281 (4th Cir. 2003); *United States v. Sampson*, 486 F.3d 13 (1st Cir. 2007); *United States v. Robinson*, 367 F.3d 278 (5th Cir. 2004); *United States v. Quinones*, 313 F.3d 49 (2nd Cir. 2002).

## IV.    CONCLUSION

The Court **DENIES** O'Reilly's motion.

**IT IS ORDERED.**

**s/Victoria A. Roberts**
**Victoria A. Roberts**
**United States District Judge**

**Dated:  August 23, 2007**

| |
|---|
| **The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 23, 2007.**<br><br>**s/Carol Pinegar**<br>**Deputy Clerk** |