**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

         **Plaintiff(s),**         **CASE NUMBER: 05-80025
HONORABLE VICTORIA A. ROBERTS**

v.

**D-1 TIMOTHY O'REILLY,
D-3 KEVIN WATSON,**

         **Defendant(s).**
_____/

**ORDER**
(REGARDING DOCUMENTS #183 and #200)

## I. INTRODUCTION

This matter is before the Court on Defendant Timothy Dennis O'Reilly's ("O'Reilly) "Motion for Bill of Particulars Regarding Aggravating Factors" (Doc. #200). Also before the Court is Defendant Kevin Watson's ("Watson") "Motion for Discovery and Inspection of Information and Evidence in Aggravation with Incorporated Brief" (Doc. #183). The Court previously GRANTED Watson's motion in substantial part. *See* Order of May 10, 2007. Hence, the Court only addresses the Bill of Particulars portion.

O'Reilly and Watson request an Order directing the Government to provide additional information or evidence regarding certain aggravating factors alleged in the Government's Notice of Intent to Seek the Death Penalty ("Notice of Intent"). Oral argument was heard on October 18, 2007.

For the following reasons, the Court **DENIES** their motions in substantial part.

1

However, the Court **GRANTS** their requests for more information regarding the victim impact factor.

## II. ARGUMENTS AND ANALYSIS

### A. Preliminary Threshold "Intent" Factors

Section A of Watson's Notice of Intent lists the following preliminary threshold "intent" factors:

1. Defendant intentionally killed the victim. 18 U.S.C. §3591(a)(2)(A).

2. Defendant intentionally inflicted serious bodily injury that resulted in the death of the victim. 18 U.S.C. §3591(a)(2)(B).

3. Defendant intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act. 18 U.S.C. §3591(a)(2)(C).

4. Defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants of the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act. 18 U.S.C. §3591(a)(2)(D).

The Court rejects Watson's argument that the Government explain exactly how it intends to prove these factors.

Unlike the defendant in *United States v. Glover*, 43 F.Supp.2d 1217 (D. Kan. 1999), Watson is aware of the factual basis underlying these preliminary threshold "intent" factors. *See Glover*, 43 F.Supp.2d at 1233 (directing the Government to amend its Notice of Intent because "[d]efendant is entitled to know the underlying factual basis for each of the [preliminary threshold "intent" factors].").

Page four of the Second Superseding Indictment states:

. . .

7. On December 14, 2001, at approximately 3:50 a.m., [NORMAN] DUNCAN, WATSON and O'REILLY, armed with 12-gauge shotguns, approached three guards employed by Total Armored Car Services.

. . .

9. On December 14, 2001, when they reached the guards, O'REILLY and WATSON fired their shotguns a total of at least six times.

10. On December 14, 2001, O'REILLY and WATSON fired 12-gauge shotguns at guard Norman Anthony Stephens, striking Stephens at least two times in the back and legs, killing him.

This is a sufficient factual basis.

**B. Statutory Aggravating Factors**

**1. Grave Risk of Death**

Section B(1) of Watson and O'Reilly's Notice of Intent states, "Defendant, in the commission of the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense. 18 U.S.C. §3592(c)(5)."

O'Reilly says the Court should require the Government to provide the names of the individuals it alleges were placed in a grave risk of death, the facts that support the alleged allegation, and a list of the injuries allegedly suffered by the additional persons. Watson argues that the Government should be required to describe in detail precisely how he created a grave risk of death to one or more persons in addition to the victim of the offense. The Court rejects their arguments; the Government already provided this information.

Page two of the "Government's Combined Brief in Response to Defendants'

Motions Challenging the Constitutionality of the Death Penalty" (Doc. #240) sets forth the names of the guards allegedly placed in grave risk of death. The Government stated, "At approximately 3:50 a.m., a three-man "Total" armored truck, driven by Michael Moore ("Moore") and staffed by guards Norman Anthony Stephens ("Stephens") and Elliott Philinganes ("Philinganes"), arrived at the Credit Union."

Page 18 describes how Watson and O'Reilly created a grave risk of death to Philinganes and Moore. It states O'Reilly, Watson, and Norman Duncan ("Duncan") confronted three armed guards – two of whom were outside their armored truck – with loaded 12-gauge shotguns, there were 6-8 shotgun blasts from at least two shotguns, and Stephens was shot by two shotgun blasts. From these facts, it can reasonably be inferred that because only two bullets struck Stephens, Philinganes and Moore were in danger of being hit by 4-6 bullets.

In addition, neither Philinganes nor Moore was injured. Page three states, "Philinganes got down on the ground in front of the truck and was unhurt." And, "Moore never exited the armored truck and was unhurt."

Further, at the October 18, 2007 hearing, the Government acknowledged that this factor pertains to the two guards who accompanied Stephens.

This factor is sufficiently pled.

### 2. Pecuniary Gain

Section B(2) of Watson and O'Reilly's Notice of Intent states, "Defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of a thing of pecuniary value. 18 U.S.C. §3592(c)(8)."

They argue the Government should be required to identify all evidence known to it that Stephens's murder – as opposed to the robbery – was done for pecuniary gain. The Court rejects this argument.

The Government turned over thousands of pages of discovery, including discovery pertaining to the $204,000 taken by the defendants. In addition, the Court previously ordered the Government to provide defendants with any physical evidence immediately and a list of witnesses, along with their statements, at least 120 days prior to trial. The Government was also ordered to provide the Court with any co-conspirator statements it intends to use at trial for an in camera review. *See* Order of May 10, 2007. Further, the Government provided its theory of how Stephens's murder was committed for pecuniary gain.

Pages 18-19 of the "Government's Combined Brief in Response to Defendants' Motions Challenging the Constitutionality of the Death Penalty" says:

> The government expects to prove at trial that defendants O'Reilly, Watson, and Duncan, each armed with a loaded 12-gauge shotgun, confronted three armed guards, two of whom were outside of their armored truck and in control of hundreds of thousands of dollars in cash contained in plastic canisters. The defendants opened fire. There were 6-8 shotgun blasts from at least two shotguns. Guard Norman Stephens was shot by two shotgun blasts, one hit him in the back and the other hit him squarely in the back of his legs. Both shots were fatal. After Stephens was shot, cooperating defendant Henry Matthews and defendant Earl Johnson came around the corner of the bank and grabbed the canisters of cash previously under the control of Stephens and his partner. Cooperating defendant Khayyam Wilson then went to the getaway vehicle and started it. One of the defendants took a .38 caliber handgun from Stephens as he lay dying. The six confederates (O'Reilly, Watson, Duncan, Johnson, Matthews, and Wilson) then fled the bank with approximately $204,000 and Stephens's gun.
>
> [T]he murder at bar was committed with the clear expectation of the receipt of something of pecuniary gain, namely the money and the

5

decedent's gun, both taken from the guards after Stephens was shot.

The Government concluded its theory on page 25:

> [D]efendants O'Reilly, Watson, and Duncan, armed with loaded shotguns, confronted armed guards, including Stephens. They shot Stephens multiple times from behind before their accomplices came around the corner and grabbed the canisters of money. A jury could rationally find that pecuniary gain motivated defendants in the murder of Norman Stephens.

This is a sufficient presentation of facts.

### C. Non-Statutory Aggravating Factors

#### 1. Watson's Notice of Intent

Section C of Watson's Notice of Intent includes the following non-statutory aggravating factors:

1. Defendant shot Norman Stephens from behind.

2. Additional violent behavior *after* killing Stephens: Defendant participated, along with co-defendant Norman Duncan, in the February 12, 2004, Comerica bank robbery during which Eddie Cromer was shot and killed. (Emphasis in original).

3. Future Dangerousness: defendant took part in an armored car robbery after the one in which he killed Stephens.

4. Lack of remorse: Defendant has shown no remorse for killing Stephens.

Watson argues the Government should be required to explain in detail the evidence it will rely upon to prove each factor. The Court rejects this argument and finds the Government has provided ample evidence, and is under prior orders to provide the information that Watson seeks.

The Government's Notice of Intent is only required to set forth "[t]he aggravating

6

factor or factors that [it] . . . proposes to prove as justifying a sentence of death." 18 U.S.C. §3593(a)(2); *see also e.g., United States v. Nguyen*, 928 F.Supp. 1525, 1545-46 (D. Kan. 1996) (denying defendant's motion to strike the Notice of Intent as constitutionally insufficient because it only lists the aggravating factors without stating the evidence the Government intends to offer in support); *United States v. LeCroy*, 441 F.3d 914, 930 (11th Cir. 2006) ("[t]he government in this case satisfied its constitutional and statutory obligations by informing the defendant of what aggravating factors - both statutory and nonstatutory - it intended to prove at trial. The government was not obligated to outline what specific pieces of evidence it planned to use to support the aggravating factors.").

The Government complied with its statutory requirement by listing the non-statutory aggravating factors it intends to prove during the penalty phase. In addition, it complied with its constitutional duty by providing Watson with the type of evidence it intends to use to prove each factor. *See United States v. Llera Plaza*, 179 F.Supp.2d 464, 472 (E.D. Pa. 2001) ("[t]he Constitution requires that the defendants be given some notice of the type of evidence the government intends to introduce at the sentencing phase.").

The Government provided its theory of the case, which is that Watson shot Stephens from behind with a 12-gauge shotgun. The Notice of Intent states the Government intends to use the Comerica bank robbery to prove Watson's "additional violent behavior." The circumstances surrounding this bank robbery is set forth on page six of the "Government's Combined Brief in Response to Defendants' Motions Challenging the Constitutionality of the Death Penalty." Further information is provided

in a footnote on page 32 of the "Government's Combined Brief in Response to Defendants' Motions Challenging the Non-statutory Aggravating Factors and Seeking a Bill of Particulars" (Doc. #250). In addition, the "Government's Supplemental Brief in Answer to Court's Request for Clarification Re: Docket #188" (Doc. #272) states that it intends to use this same Comerica bank robbery to prove Watson's "future dangerousness" (but, see Order entered on Doc. #188). And, on page 24 of the "Government's Combined Brief in Response to Defendants' Motions Challenging the Non-statutory Aggravating Factors and Seeking a Bill of Particulars," the Government states that it intends to use Watson's post-arrest conduct, including statements made to cell mates as "lack of remorse" evidence to support the "future dangerousness" factor (but, see Order entered on Doc. #189).

The Court notes that section C(4) was stricken from Watson's Notice of Intent because the Government will only use "lack of remorse" evidence to support the "future dangerousness" factor. *See* Order entered on Doc. #189. The Court also precludes the Government from using the Comerica bank robbery as evidence of "future dangerousness" and "additional violent behavior." *See* Order entered on Doc. #188.

### 2. O'Reilly's Notice of Intent

Section C(2) of O'Reilly's Notice of Intent states, "Additional violent behavior: Defendant committed the June 19, 2003 Comerica bank robbery wherein he opened fire without warning on Guard Jonathan Smith with an SKS rifle. Defendant also committed other armored car robberies and several home invasion robberies of drug dealers with co-defendant Norman Duncan."

O'Reilly argues the Government should be required to identify every drug dealer

8

and any other person whom he allegedly robbed or planned to rob, including the date, time, and location of each home invasion robbery. The Court rejects O'Reilly's argument based on the Government's representation that it turned over thousands of pages of discovery, including reports concerning the home invasion robberies.

### 3. Victim Impact Factor

Section C(5) of Watson and O'Reilly's Notice of Intent says, "The substantial and significant effect of the offense on the victim's family will be established through oral testimony and victim impact statements." Watson argues that the Government should be required to explain in detail the evidence it will rely upon to prove this factor. O'Reilly requests an Order compelling the Government to provide the following evidence:

1. [A]ll specific facts that the prosecution deems to be personal characteristics of Norman Stephens that make his murder more death worthy than the murder of any other individual.

2. [T]he specific facts that make the murder of Norman Stephens have more impact upon his family than any other family that suffered the loss by murder of a loved one.

The Federal Death Penalty Act specifically allows the Government to introduce victim impact evidence during the penalty phase:

> The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the . . . victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the . . . victim's family, and any other relevant information.

18 U.S.C. §3593(a). However, the proper scope and limit of victim impact evidence is a "[m]atter for the Court's discretion and must be determined with the consideration for the constitutional limitation that the jury must not be influenced by passion or prejudice." *United States v. Cooper*, 91 F.Supp.2d 90, 111 (D.D.C. 2000) (quoting *United States v.*

9

*McVeigh*, 944 F.Supp. 1478, 1491 (D. Colo. 1996)). The *Cooper* court required the Government to amend its Notice of Intent to include more specific information concerning the victim impact factor. *Cooper*, 91 F.Supp.2d at 111. Other courts also held that the victim impact factor requires more specific information. *See Llera Plaza*, 179 F.Supp.2d at 475 ("[i]n order to allow the defendants to adequately prepare responses to sentencing phase evidence, and in order to allow the court to determine if a pre-sentencing hearing will be necessary to review [victim impact] evidence, the government will be ordered to submit an outline of its proposed victim impact evidence"); *United States v. Bin Laden*, 126 F.Supp.2d 290, 304 (S.D.N.Y. 2001) ("[t]he Court orders that the Government provide Defendants with a limited bill of particulars specifying the particularized categories of 'injury, harm, and loss' that will be proffered at sentencing, whether it be suffered by a victim or a victim's family"); *Glover*, 43 F.Supp.2d at 1225 (holding that the defendant is entitled to greater specificity regarding the victim impact factor).

The Court will also require the Government to present more specific information regarding how Stephens's murder caused a "substantial and significant" effect on his family. However, the document should be "[a]kin to an informative outline[] . . . not a revelation of evidentiary detail or the Government's theory of its case." *See Bin Laden*, 126 F.Supp.2d at 304-05.

### III. CONCLUSION

The Court **DENIES** O'Reilly and Watson's motions in substantial part. However, the Court **GRANTS** their requests for more information regarding the victim impact

factor.  The Government will: (1) give defense counsel a list of its potential victim impact witnesses, (2) state how Stephens's murder "substantially and significantly" affected each witness, and (3) outline its proposed victim impact evidence.  The Court will set a time for disclosure if the parties cannot otherwise agree.

    **IT IS ORDERED**.

                                                                                         /s/ Victoria A. Roberts
                                                                                         Victoria A. Roberts
                                                                                         United States District Judge

Dated:  December 28, 2007