**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

                **Plaintiff(s),**          **CASE NUMBER: 05-80025**
                                          **HONORABLE VICTORIA A. ROBERTS**

**v.**

**D-1  TIMOTHY O'REILLY,**

                **Defendant(s).**
_____/

**ORDER**
(REGARDING DOCUMENTS #206 and #209)

## I.    INTRODUCTION

This matter is before the Court on Defendant's "Motion to Strike the Non-
Statutory Aggravators Alleged in the Government's Notice of Intent to Seek the Death
Penalty Filed on November 1, 2006, and Request for Evidentiary Hearing on any Non-
Statutory Aggravators not Stricken." (Doc. #209).  Defendant O'Reilly ("O'Reilly") argues
that the non-statutory aggravating factors alleged in the Government's Notice of Intent
to Seek the Death Penalty ("Notice of Intent") violate his Fifth, Sixth, and Eighth
Amendment rights.  Oral argument was heard on October 18, 2007.

Also before the Court is O'Reilly's "Motion to Compel Government to Disclose the
'Death Penalty Evaluation Form' and any other Documents reviewed by Attorney
General Alberto Gonzales for the Purpose of Authorizing the Death Penalty for
Defendant."  (Doc. #206).  O'Reilly asks the Court to order the United States
Department of Justice ("DOJ") and/or Attorney General Gonzales ("Gonzales") to

produce all documents Gonzales reviewed before issuing his decision to seek the death penalty.

For the following reasons, O'Reilly's motion to strike the non-statutory aggravators is **GRANTED IN PART AND DENIED IN PART.**  However, two portions of it - to strike the "future dangerousness" non-statutory aggravating factor and his request for an evidentiary hearing - are **DENIED WITHOUT PREJUDICE**.

O'Reilly's motion to compel disclosure of documents is **DENIED**.

## II.    AGGRAVATING FACTORS

The Government listed five non-statutory aggravating factors in section C of the Notice of Intent:

1. Defendant shot Norman Stephens from behind, and while Stevens[sic] was already wounded and on the ground.

2. Additional violent behavior: Defendant committed the June 19, 2003 Comerica bank robbery wherein he opened fire without warning on Guard Jonathan Smith with an SKS rifle.  Defendant also committed other armored car robberies and several home invasion robberies of drug dealers with co-defendant Norman Duncan.

3. Future Dangerousness: Defendant stated that he planned to commit additional robberies when he is released from prison.  Defendant stated that he intends to kill the witnesses who testified against co-defendant Norman Duncan when released from prison.  Defendant also stated that he would have killed co-defendant Earl Johnson after

the Dearborn Credit Union robbery if he would have known how Johnson would handle his share of the proceeds.

4.  Lack of remorse: Defendant's taped conversation evidences his complete lack of remorse for his killing of Stephens and includes defendant's statement that he will kill again.

5.  The substantial and significant effect of the offense on the victim's family will be established through oral testimony and victim impact statements.

## A.  Weighing of Non-Statutory Aggravating Factors

The Federal Death Penalty Act ("FDPA") is a weighing statute, which requires the jury to balance statutory and non-statutory aggravating factors against mitigating factors to determine if the death penalty is warranted. *See* 18 U.S.C. §3593(e) ("the jury[] . . . shall consider whether all the aggravating factor[sic] or factors found to exist sufficiently outweigh all the mitigating factor[sic] or factors found to exist to justify a sentence of death[.]")

O'Reilly says it is a violation of his Fifth, Sixth, and Eighth Amendment rights to allow the jury to "weigh" non-statutory aggravating factors that duplicate statutory factors or offense elements, and they (the non-statutory aggravating factors) do not genuinely narrow the class of persons eligible for the death penalty. According to O'Reilly, this "tips the scales" in favor of the death penalty, *See Stringer v. Black*, 503 U.S. 222, 231-32 (1992), and leaves the jury with the false impression that numerous non-statutory aggravating factors exist.

Two statutory aggravating factors are in the Notice of Intent:

1.  Defendant, in the commission of the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense.  18 U.S.C. §3592(c)(5).

2.  Defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of a thing of pecuniary value.  18 U.S.C. §3592(c)(8).

The Court disagrees that the non-statutory aggravating factors duplicate the statutory aggravating factors.  The statutory factors focus on the indicted offense; the non-statutory factors describe: (1) past crimes O'Reilly allegedly committed; (2) the circumstances surrounding Stephens's murder; (3) O'Reilly's alleged statements concerning planned future conduct; and (4) the effect the murder has had on Stephens's family.

Furthermore, it is constitutional to allow the jury to "weigh" non-statutory aggravating factors that may duplicate offense elements.  *See United States v. Diaz*, 2007 WL 656831 at *16 (N.D. Cal. Feb. 28, 2007); *see also Lowenfield v. Phelps*, 484 U.S. 231, 246 (1988) ("the fact that the aggravating [factor] duplicated one of the elements of the crime [did] not make [the defendant's] sentence constitutionally infirm."). "[T]he Eighth Amendment does not prohibit the use of an aggravating factor during the sentencing phase that duplicates one or more elements of the offense of the crime found at the guilt phase." *United States v. Higgs*, 353 F.3d 281, 315 (4th Cir. 2003) (citations omitted).

Finally, the jury narrows the class of persons eligible for the death penalty by finding guilt, at least one preliminary threshold "intent" factor, and at least one statutory aggravating factor.  The primary function of non-statutory aggravating factors is to provide the jury with all possible relevant information to allow it to tailor its verdict to the

specific defendant.  *See United States v. Davis*, 912 F.Supp. 938, 943 (E.D. La. 1996) (finding that after the jury makes threshold findings of intent and at least one statutory aggravating factor, "[t]he jury is then to consider other information and factors, both in further aggravation or in mitigation of the penalty.  This additional information is to assist the jury in making its ultimate decision.  Here, the goal is to individualize the sentence as much as possible.").

But, non-statutory aggravating factors can also play a narrowing function role at the penalty phase.  When a jury finds the Government proved at least one non-statutory aggravating factor beyond a reasonable doubt, it must determine if that factor(s) and the statutory aggravating factors sufficiently outweigh mitigating factors to impose a death sentence.  Hence, although non-statutory aggravating factors do not narrow the class of persons eligible for the death penalty, they may help further narrow that class to those the jury believe warrant a death sentence.

Also, see Order entered on Docs. #195 and #222.

## B.  The FDPA Authorizes Non-Statutory Aggravating Factors

O'Reilly says allowing the Government to include non-statutory aggravating factors in the Notice of Intent: (1) changes the statutory scheme; (2) gives the Government unlimited discretion to seek the death penalty; (3) violates Congress's intent; and (4) renders the enumerated aggravating factors superfluous and insignificant.  *See Zeigler Coal Co. v. Kleppe*, 536 F.2d 398, 406 (C.A.D.C. 1976).

O'Reilly argues the Government exceeds its statutory authority in alleging non-statutory aggravating factors because 18 U.S.C. §3591 defines who may be sentenced to death and in what manner: "[a] defendant who has been found guilty . . . shall be

5

sentenced to death if, after consideration of the factors set forth in section 3592 . . . it is determined that imposition of a sentence of death is justified." O'Reilly argues the Government can only allege statutory aggravating factors because "set forth" means to list, to enumerate, and to specify; 18 U.S.C. §§ 3592(c) and 3593(a) (which the Government relies on for authority to allege non-statutory aggravating factors) cannot supersede the specific limitation of 18 U.S.C. §3591; and, specific terms prevail over general terms. *See Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 228-29 (1957). This is an incorrect interpretation of the statute.

Congress specifically listed 16 statutory aggravating factors, but the FDPA does not preclude the consideration of non-statutory aggravating factors. In addition to 18 U.S.C. §§ 3592(c) and 3593(a), authority for non-statutory aggravating factors can be found in 18 U.S.C. §§ 3593(c) and (d). Section 3593(c) says, "[a]t the sentencing hearing, information may be presented as to any matter relevant to the sentence, including any . . . aggravating factor permitted or required to be considered under section 3592." Section 3593(d) says the jury "[s]hall return special findings identifying any aggravating factor or factors set forth in section 3592 found to exist and any other aggravating factor for which notice has been provided under subsection (a) found to exist." The jury can consider non-statutory aggravating factors if the Government gives defendant notice of the factors it intends to present. *See* 18 U.S.C. §3592(c). The Government complied with that requirement by listing five non-statutory aggravating factors in the Notice of Intent.

In addition, other courts uphold the constitutionality of non-statutory aggravating factors under the FDPA. *See e.g., United States v. Llera Plaza*, 179 F.Supp.2d 444,

454 (E.D. Penn. 2001) ("[t]here is nothing in the catch-all sentence of §3592(c) which runs afoul of the Constitution") (citing *United States v. Allen*, 247 F.3d 741, 757-58 (8th Cir. 2001); *United States v. Cooper*, 91 F.Supp.2d 90, 100 (D.D.C. 2000); *United States v. Frank*, 8 F.Supp.2d 253, 264-66 (S.D.N.Y. 1998)); *United States v. Sampson*, 486 F.3d 13, 44 n.14 (1st Cir. 2007) ("[w]hile only the finding of a statutory aggravating factor can render a defendant death-eligible, the jury may consider non-statutory aggravating factors in deciding whether a sentence of death is appropriate") (citing 18 U.S.C. §3593(c)-(e)).

### C. The FDPA is Constitutional

Although O'Reilly does not specify what constitutional provision is violated, he argues that irrespective of *Zant v. Stephens*, 462 U.S. 862 (1983), the FDPA is unconstitutional if the Court finds it authorizes non-statutory aggravating factors. O'Reilly argues the FDPA allows the Government unlimited discretion to "invent and allege" such factors. He says the danger of such discretion is evident when the Government simply rephrases offense elements and labels them non-statutory aggravating factors.

The United States Supreme Court held that a death penalty scheme that allows a jury to consider non-statutory aggravating factors is constitutional. The Georgia capital sentencing statute is similar to the FDPA in that it requires the jury to first find at least one statutory aggravating factor before it may consider imposing the death penalty. Once this threshold is met, the jury may consider "all the facts and circumstances of the case." *See Zant*, 462 U.S. at 872. In upholding this death penalty scheme, the Supreme Court held:

[s]tatutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty. But the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death.

*Id.* at 878-79. "What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Id.* at 879 (emphasis in original).

In addition, there are at least four limitations the Government must consider in its decision to allege non-statutory aggravating factors. *See United States v. Jones*, 132 F.3d 232, 239-40 (5th Cir. 1998). First, the statute limits the scope of aggravating factors to those for which the Government gave prior notice. *Id.* at 240 (citing 18 U.S.C. §3593(a)). Second, death penalty jurisprudence guides the Government in formulating non-statutory aggravating factors. Third, the district court is required to limit the admission of useless and impermissibly prejudicial information. *Jones*, 132 F.3d at 240. Finally, the jury must find at least one statutory aggravating factor beyond a reasonable doubt before it can even consider non-statutory aggravating factors. *Id.* (citing 18 U.S.C. §3593(d)).

For all of these reasons, the Court declines to find the FDPA unconstitutional because it authorizes non-statutory aggravating factors.


### D. Non-Statutory Aggravating Factors not Found by a Grand Jury

O'Reilly says that while statutory aggravating factors were presented to a grand jury, *Cunningham v. California*, 127 S.Ct. 856 (2007) requires that non-statutory

8

aggravating factors be presented to a grand jury as well.

In *Cunningham*, the petitioner was convicted of continuous sexual abuse of a child under the age of 14. California's determinate sentencing law ("DSL") punishes that offense by imprisonment of a lower-term sentence of six years, a middle-term sentence of 12 years, or an upper-term sentence of 16 years. *Cunningham*, 127 S.Ct. at 860. The DSL obliged the court to sentence the petitioner to 12 years unless the court found one or more additional facts in aggravation. "Selection of the upper term is justified only if, after a consideration of all the relevant facts, the circumstances in aggravation outweigh the circumstances in mitigation." *Id.* at 863 n.9 (quoting Cal. Rule of Court 4.420(b)). The court sentenced the petitioner to 16 years after it found six aggravating facts outweighed the sole mitigating fact. *Id.* at 860-61. Petitioner's sentence was affirmed on appeal. *Id.* at 861.

In reversing, the Supreme Court stated, "[u]nder the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *Id.* at 863-64 (citing *Jones v. United States*, 526 U.S. 227 (1999); *Apprendi v. New Jersey*, 530 U.S. 466 (2000); and *Harris v. United States*, 536 U.S. 545, 557 (2002)). The Court held:

> Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt, . . . the DSL violates *Apprendi*'s bright-line rule: Except for a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

*Cunningham*, 127 S.Ct. at 868 (quoting *Apprendi*, 530 U.S. at 490).

O'Reilly argues the DSL invalidated in *Cunningham* is indistinguishable from the FDPA, where at least one statutory aggravating factor must be established, but it alone may not be sufficient to justify the death penalty. According to O'Reilly, the *Cunningham* DSL required the court to find additional aggravating facts and weigh them against any mitigating factors to determine whether a higher sentence was justified. Similarly, O'Reilly says when statutory aggravating factors are insufficient to justify a death sentence, the jury must find at least one non-statutory aggravating factor to weigh against mitigating factors to justify a higher sentence. According to O'Reilly, because the jury must find at least one non-statutory aggravating factor before he is exposed to the death penalty, they must be submitted to a grand jury.

The Court disagrees.

A defendant is exposed to the death penalty after the jury finds guilt, at least one preliminary threshold "intent" factor, and at least one statutory aggravating factor. A jury does not need to find a non-statutory aggravating factor to impose a death sentence. In the absence of a non-statutory aggravating factor, the jury will determine if the statutory aggravating factors alone "sufficiently outweigh" any mitigating factors.

At this juncture, the jury can be likened to a judge at sentencing. The statutory maximum is known; the guidelines are established; no sentence above that range can be imposed; and the jury is now looking at some of the same evidence used to establish guilt, to fashion a sentence. Indeed, 18 U.S.C. §3661 states that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence."

10

The jury at the weighing stage is beyond threshold considerations and must have before it all information pertaining to the Defendant in making its decision.

Also, see Order entered on Doc. #186.

**E. Specific Non-Statutory Aggravating Factors**

O'Reilly addresses each non-statutory aggravating factor he argues the Court should strike.

### 1. Lack of Remorse and Future Dangerousness

The Government concedes it will not argue O'Reilly's "lack of remorse" as a separate non-statutory aggravating factor, so the Court strikes this factor from section C(4) of the Notice of Intent. But, the Government says it may present such evidence to support the "future dangerousness" non-statutory aggravating factor.

O'Reilly disagrees this can be done. He acknowledges the United States Supreme Court upheld the Texas death penalty scheme even though it allows for "future dangerousness" evidence. *See Jurek v. Texas*, 428 U.S. 262, 274-76 (1976) (holding that Texas can constitutionally require a jury to answer the question of "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society" if he were not sentenced to death). But, O'Reilly says the FDPA is different because it is a weighing scheme that instructs the jury to balance statutory and non-statutory aggravating factors against any mitigating factors. O'Reilly argues the jury cannot balance "future dangerousness" evidence because it duplicates statutory aggravating factors Congress authorized the Government to use to prove a defendant's "future dangerousness." *See* 18 U.S.C.

§3592(c)(2) (previous conviction of violent felony involving firearm); 18 U.S.C. §3592(c)(3) (previous conviction of offense for which a sentence of death or life imprisonment was authorized); 18 U.S.C. §3592(c)(4) (previous conviction of other serious offenses); 18 U.S.C. §3592(c)(10) (conviction for two felony drug offenses); 18 U.S.C. §3592(c)(12) (conviction for serious federal drug offenses). He says the Government cannot create a general "future dangerousness" category.

O'Reilly further argues the Court should strike the "future dangerousness" factor because he faces life in prison without the possibility of parole if he is convicted of a death-eligible crime and not sentenced to death. O'Reilly asserts the evidence the Government intends to rely on has no practical substance, does not provide any meaningful guidance to the life or death decision, and cannot fairly measure whether he will be a danger to society. According to O'Reilly, even if the alleged threats are genuine, he cannot act on them while incarcerated.

The Court finds that "future dangerousness" as a non-statutory aggravating factor is proper. *See e.g., Allen*, 247 F.3d at 788 ("[g]iven the broad language of the FDPA as to the allowance of nonstatutory aggravating factors, there is no reason under the FDPA why future dangerousness cannot be presented to the jury") (citing 18 U.S.C. §3592(c)); *Diaz*, 2007 WL 656831 at *23 ("[e]vidence of future dangerousness has generally been upheld as admissible under the FDPA."). "The fact that Congress chose not to list 'future dangerousness' as a statutory factor is irrelevant because Congress specifically allows the Government to present nonstatutory aggravating factors to the jury." *United States v. Henderson*, 485 F.Supp.2d 831, 870 (S.D. Ohio 2007).

The Court also finds the Government may present "lack of remorse" evidence to

12

support the "future dangerousness" non-statutory aggravating factor.  *See United States v. Bin Laden,* 126 F.Supp.2d 290, 303-04 (S.D.N.Y. 2001) ("[L]ower courts have uniformly upheld future dangerousness as a non-statutory aggravating factor in capital cases under the FDPA, including instances where such factor is supported by evidence of . . . lack of remorse"); *Diaz*, 2007 WL 656831 at *25 ("This order follows the weight of authority from other courts finding 'lack of remorse' constitutional and admissible to support future dangerousness"); *United States v. Taylor*, 2006 WL 3229966 at *10 (E.D. Tenn. Oct. 31, 2006) ("[e]vidence proving . . . lack of remorse [is an] indicator[], and thus evidence, of future dangerousness"); *United States v. Jones*, 2003 WL 23653033 at *2 n.2 (D. Conn. Oct. 10, 2003) (noting that defendant's lack of remorse could be used as evidence to support a finding of future dangerousness); *see also* Order (Regarding Doc. #189).

However, "[w]hen the only alternate punishment to death is life imprisonment without the possibility of parole[] . . . district courts appear to have uniformly held that the government is limited to presenting evidence on future dangerousness [as it applies to life in prison]."  *United States v. Rodriguez*, 2006 WL 487117 at *5 (D.N.D. Feb. 28, 2006) (citing *Llera Plaza*, 179 F.Supp.2d at 477-78; *Cooper*, 91 F.Supp.2d at 111-12; *United States v. Peoples*, 74 F.Supp.2d 930, 931 (W.D. Mo. 1999)).  The Notice of Intent does not include any evidence related to O'Reilly's alleged dangerousness in prison; only alleged statements about crimes he plans to commit when released from prison and what he would have done to his co-defendant Earl Johnson are included. Hence, the Government may not introduce "future dangerousness" evidence if O'Reilly is convicted on count two and not count three; "future dangerousness" evidence would

be irrelevant on a count two conviction because the jury could only sentence O'Reilly to life in prison or the death penalty.  *See* 18 U.S.C. §2113(e).

### 2.  Additional Violent Behavior

O'Reilly says the Court must strike the "additional violent behavior" factor because it is duplicative of the "future dangerousness" non-statutory aggravating factor.

The Court disagrees.  "Additional violent behavior" focuses on O'Reilly's alleged past criminal activity, while "future dangerousness" focuses on O'Reilly's alleged statements regarding future criminal activity he plans.

O'Reilly also argues the Court should strike this factor because it is vague. According to O'Reilly, he cannot adequately prepare his defense without more detail surrounding the allegations that he committed other armored car robberies and several home invasion robberies of drug dealers with co-defendant Norman Duncan.  O'Reilly analogizes the Notice of Intent to the indictment and states if an indictment simply alleged these facts, it would be dismissed for lack of specificity.

The Court declines O'Reilly's request.  The Notice of Intent must only list the statutory and non-statutory aggravating factors the Government intends to prove.  *See* 18 U.S.C. §3593(a)(2).  The Government exceeded this requirement by including the evidence it proposes to use in support of this factor.

O'Reilly asserts the Court should strike this factor because it duplicates counts four, five, and six of his Second Superseding Indictment.  O'Reilly refers the Court to *State v. Middlebrooks*, 840 S.W.2d 317, 341-42 (Tenn. 1992).

Count four alleges O'Reilly and certain co-defendants participated in a conspiracy to rob Comerica bank.  Count five alleges they aided and abetted each other

14

in the Comerica bank robbery. Count six alleges they aided and abetted each other in using and carrying a firearm during the Comerica bank robbery. The "additional violent behavior" factor alleges O'Reilly committed the Comerica bank robbery.

The Court declines to strike this factor "solely because of an alleged duplication of indictment charges." *See Diaz*, 2007 WL 656831 at *16. In *Diaz*, the defendants argued that certain non-statutory aggravating factors inappropriately duplicated charges in the indictment. The court held that contention lacked merit because "the Eighth Amendment does not prohibit the use of an aggravating factor during the sentencing phase that duplicates one or more elements of the offense of the crime found at the guilt phase." *Diaz*, 2007 WL 656831 at *16 (citations omitted).

O'Reilly also argues this factor improperly links a non-capital offense – the Comerica bank robbery – to a capital offense. O'Reilly relies on *Ring v. Arizona*, 536 U.S. 584 (2002), which held the Sixth Amendment requires statutory aggravating factors to be found by a jury because they operate as the "functional equivalent of an element of a greater offense." *Ring*, 536 U.S. at 609 (quoting *Apprendi*, 530 U.S. at 494 n.19). O'Reilly's reliance on *Ring* is misplaced. *See* Order (Regarding Doc. #186). Further, the Notice of Intent says the Government is only seeking the death penalty for counts two and three of the Second Superseding Indictment, which relate to the Dearborn Federal Credit Union robbery.

### 3. Circumstances Surrounding the Shooting

O'Reilly argues the Government lacks credible support for the allegation that he "shot Norman Stephens from behind, and while Stevens[sic] was already wounded and

on the ground."  O'Reilly contends the only evidence the Government will use to support its theory is his "manipulated" statement to Nix-Bey, a Government informant.  The Court declines to strike this factor.

The Government states that in addition to O'Reilly's statements, it will offer the testimony of a Wayne County Medical Examiner, who will testify that Stephens was shot twice in the back and that each shotgun blast alone would have brought Stephens to the ground.  In addition, it is the jury that determines the credibility of witnesses and the weight to give O'Reilly's statements.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

O'Reilly also argues there is nothing inherently aggravating about this conduct that warrants the death penalty.  The Government disagrees, stating this factor speaks to the brutal nature of Stephens's killing.

The FDPA does not limit the non-statutory aggravating factors the Government can present.  *See* 18 U.S.C. §3592(c).  However, "[t]he Government may not employ simply any non-statutory factor of its choice."  *Frank*, 8 F.Supp.2d at 265.  Instead, the Government must choose the factors it believes appropriate to the case and submit them to the defendant and to the Court.  If the Court determines that any factor is inappropriate or runs afoul of Supreme Court jurisprudence, the factor will be excluded. *Id.*; *see also* 18 U.S.C. §3593(c) ("information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury"); *Jones*, 132 F.3d at 250-51 (excluding non-statutory factors as

duplicative); *Tuilaepa v. California*, 512 U.S. 967, 972 (1994) (holding that non-statutory factors cannot be unconstitutionally vague).

This factor is proper. The jury will most likely hear about the circumstances surrounding Stephens's killing during the guilt phase. Therefore, its probative value is not outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. In addition, this factor does not duplicate any other non-statutory aggravating factor, and it is not unconstitutionally vague.

O'Reilly also says the "circumstances surrounding the offense" non-statutory aggravating factor duplicates 18 U.S.C. §§ 3591(a)(2)(C), 3591(a)(2)(D), and 3592(c)(5). Section 3591(a)(2)(C) states, "Defendant intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act." Section 3591(a)(2)(D) states, "Defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants of the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act."

The section 3591(a) factors do not duplicate the non-statutory aggravating factors. Section 3591(a) lists preliminary threshold "intent" factors that the jury does not weigh in making a sentencing recommendation. The jury finds one or more of these threshold factors at the guilt phase; it evaluates non-statutory aggravating factors at the penalty phase.

Further, section 3592(c)(5) states, "Defendant, in the commission of the offense,

17

knowingly created a grave risk of death to one or more persons in addition to the victim of the offense."  The Court finds the "circumstances surrounding the offense" non-statutory aggravating factor does not duplicate this statutory aggravating factor.  The statutory aggravating factor relates to the individuals who were allegedly placed in a grave risk of death; the non-statutory aggravating factor relates to how Stephens was killed.

### F.  Request for Evidentiary Hearing

O'Reilly asserts that unreliable information may be introduced in a death penalty sentencing hearing because the rules of evidence are relaxed.  He requests an Evidentiary Hearing several months in advance of trial on any non-statutory aggravating factor the Court does not strike.  He asks that the Government be required to produce the evidence or information it seeks to offer in support so the Court can assess its reliability and the time complexity involved in its presentation.

"[T]his Court has the authority to conduct a hearing to examine the reliability [and admissibility] of evidence the government intends to introduce at the sentencing phase." *Llera Plaza*, 179 F.Supp.2d at 469; *see also Davis*, 912 F.Supp. at 949.  However, the Court finds that a pre-trial Evidentiary Hearing is unnecessary.  *See United States v. Solomon*, 2007 WL 1878030 at *16 (June 26, 2007) (citing *Frank*, 8 F.Supp.2d at 278-79)).

First, O'Reilly is unlikely to be surprised by the evidence offered at the penalty phase because much of it will be introduced during the guilt phase.  *See Frank*, 8 F.Supp.2d at 278-79.  Second, the Court is required to exclude any information at the penalty phase that is more unfairly prejudicial than probative.  *Id.* at 279; *see also* 18

U.S.C. §3593(c).  Third, the penalty phase is an adversarial proceeding where the defendant is "permitted to rebut any information received at the hearing," and may "present argument as to the adequacy of the information to establish the existence of any aggravating factor."  *Id.* (quoting 18 U.S.C. §3593(c)).

However, the Court will be in a better position to evaluate the relevance of the evidence and the complexity involved in presenting the evidence after the guilt phase. O'Reilly may renew his evidentiary objections at the conclusion of the guilt phase, and the Court will reconsider the need for an Evidentiary Hearing.  *See Solomon*, 2007 WL 1878030 at *16.

### G.  Statutory Aggravating Factors

Other arguments O'Reilly makes are that statutory aggravating factors are duplicative and vague and the Government expands the "intent to kill" preliminary threshold "intent" factor into four separate aggravating factors.  These are similar to arguments made in previous motions and are not addressed here.  The Court refers the parties to the Order entered on Docs. #187 and #204.

### III.  NOTICE OF INTENT AND DEATH PENALTY PROTOCOL

### A.  Notice of Intent

O'Reilly argues the notice provision of the FDPA, 18 U.S.C. §3593(a), violates his due process rights because it allows a biased decision-maker to issue an "uninformative" Notice of Intent.

The Court declines to hold the notice provision unconstitutional.

The Government cannot seek the death penalty without assistance from a

Federal Grand Jury.  Although the Government ultimately issues the Notice of Intent, the death penalty is not an option if the grand jury does not indict on a death-eligible offense.

On October 26, 2005, the Government obtained a Second Superseding Indictment from a Federal Grand Jury.  In count two of the indictment, the grand jury found O'Reilly and his co-defendants killed Stephens in the commission of the Dearborn Federal Credit Union robbery, in violation of 18 U.S.C. §2113(e).  In count three of the indictment, the grand jury found they knowingly carried and used a 12-gauge shotgun during and in relation to a bank robbery, in violation of 18 U.S.C. §924(c)(1), and in the course of this violation unlawfully killed Stephens with malice aforethought by shooting him with the firearm, in violation of 18 U.S.C. §924(j).  The Government filed the Notice of Intent on November 1, 2006.

By presenting its case to a Federal Grand Jury before issuing a Notice of Intent, the Government complied with the Constitution and the FDPA.  *See United States v. Robinson*, 367 F.3d 278, 290 (5th Cir. 2004) ("[t]he government can easily comply with both its constitutional obligations (by first going to the grand jury) and its statutory obligations (by later filing a §3593(a) notice of intention to seek the death penalty.")).

 In addition, the Notice of Intent was not "uninformative."  The Government listed the preliminary threshold "intent" factors, the statutory aggravating factors, and the non-statutory aggravating factors it intends to prove.  It also provided the violent crimes it will rely on to prove additional violent behavior, the statements it will use to prove future dangerousness, and the conversation it will use to show a lack of remorse.  This is more than sufficient information.  *See e.g., United States v. Nguyen*, 928 F.Supp. 1525, 1545-

46 (D. Kan. 1996) and *United States v. LeCroy*, 441 F.3d 914, 930 (11th Cir. 2006) ("[t]he government in this case satisfied its constitutional and statutory obligations by informing the defendant of what aggravating factors - both statutory and nonstatutory - it intended to prove at trial. The government was not obligated to outline what specific pieces of evidence it planned to use to support the aggravating factors"); *see also* 18 U.S.C. §3593(a)(2).

### B. Death Penalty Protocol

Decisions to seek the death penalty in the federal system are made pursuant to the Death Penalty Protocol ("Protocol"). The Protocol was promulgated by the DOJ on January 27, 1995 shortly after the enactment of the FDPA. It provides:

> [i]n any post-indictment case in which the United States Attorney is considering whether to request approval to seek the death penalty, the United States Attorney shall give counsel for the defendant a reasonable opportunity to present any facts, including any mitigating factors for the consideration of the United States Attorney.

United States Attorney's Manual §9-10.050 ("USAM").

The United States Attorney then submits to the Attorney General: (1) a prosecution memoranda explaining the basis for his recommendation for or against the death penalty; (2) a death-penalty evaluation form; (3) a non-decisional information form; (4) all existing and proposed superseding indictments; (5) a draft Notice of Intent if he recommends the death penalty; (6) any documents or materials provided by defense counsel in the course of the death penalty review process; (7) the name of the United States Attorney responsible for communicating with the capital case unit about the case; and (8) any court orders and deadlines. *Id.* at §9-10.080. The Attorney General finally decides whether to seek or not seek the death penalty. *Id.* at §9-10.040. **1.**

21

**Due Process and Procedural Rights**

O'Reilly states that when Congress gave this authority to the Attorney General, it did so assuming he would protect due process. *See Greene v. McElroy*, 360 U.S. 474, 507 (1959) ("Where administrative action has raised serious constitutional problems, the Court has assumed that Congress or the President intended to afford those affected by the action the traditional safeguards of due process."). But, O'Reilly argues his due process rights and procedural rights under the Administrative Procedure Act ("APA") were violated. He says the Government unconstitutionally failed to inform him of the basis on which it would recommend the death penalty so he could adequately present facts and mitigating factors to the United States Attorney. *See de la Llana-Castellon v. I.N.S*, 16 F.3d 1093, 1096 (10th Cir. 1994) ("[t]he fundamental requirement of due process is the opportunity to be heard at a 'meaningful time and in a meaningful manner'") (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

Because the USAM does not create any substantive or procedural rights, the Government did not violate O'Reilly's rights. The USAM explicitly states, "[t]he Manual provides only internal Department of Justice guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." USAM §1-1.100.

Further, other courts hold the USAM does not create rights for criminal defendants. *See e.g., United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) (citing *United States v. Montoya*, 45 F.3d 1286, 1295 (9th Cir. 1995); *United States v. Piervinanzi*, 23 F.3d 670, 682 (2nd Cir. 1994); *United States v. Lorenzo*, 995 F.2d 1448, 1453 (9th Cir. 1993); *United States v. Busher*, 817 F.2d 1409, 1411 (9th Cir. 1987));

*United States v. Roman*, 931 F.Supp. 960, 964 (D.R.I. 1996) (citing *United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir. 1990); *United States v. Stansfield*, 874 F.Supp. 640 (M.D. Pa. 1994); *United States v. Loften*, 518 F.Supp. 839 (S.D.N.Y. 1981)); *United States v. Feliciano*, 998 F.Supp. 166, 175 (D. Conn. 1998).

Finally, the APA excludes from coverage "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. §552(b)(5).

### 2. Disclosure of Internal Documents

O'Reilly states that although the Attorney General has discretion to seek the death penalty, race cannot be a factor. *See Swain v. Alabama*, 380 U.S. 202, 203-04 (1965). O'Reilly believes "Attorney General Gonzales's choice to seek the death penalty in his case was motivated by unconstitutional and purposefully discriminatory racial considerations" because this was an interracial murder and O'Reilly believes white defendants face the death penalty at a higher rate than other races under Gonzales. *See* Def. Exh. 1 and 2, charts entitled "Odds of Facing the Death Penalty by Race of Defendant and Victim Combinations, Attorney General Ashcroft" and "Odds of Facing the Death Penalty by Race of Defendant and Victim Combinations, Attorney General Gonzales – November 1, 2006." O'Reilly argues he is entitled to review all of the documents Gonzales used in his decision, including, but not limited to the death-penalty evaluation form and the prosecution memoranda.

Some of O'Reilly's argument was addressed by the Court in its Order (Regarding Doc. #208) and will not be addressed here.

O'Reilly finds additional support for his request for disclosure in *United States v.*

23

*Feliciano*, 998 F.Supp. 166 (D. Conn. 1998) and *United States v. Roman*, 931 F.Supp. 960 (D.R.I. 1996). However, the courts in these cases held the Protocol does not give defendants a right to discover this information because it does not create substantive or procedural rights. *Feliciano*, 998 F.Supp. at 169; *Roman*, 931 F.Supp. at 964. This Court agrees with those holdings.

Furthermore, "[t]he Death Penalty Evaluation Form and prosecution memorandum are internal government documents created as part of a deliberative process. As such, they are protected from disclosure." *United States v. Furrow*, 100 F.Supp.2d 1170, 1172 (C.D. Cal. 2000); *see also United States v. W.R. Grace*, 455 F.Supp.2d 1140, 1143 (D. Mont. 2006) ("Under the common law deliberative process privilege, government agencies or departments may refuse to disclose information related to intra-governmental opinions, recommendations, proposals, etc., which are related to their decisional or policymaking functions.").

Disclosure is prohibited because "[t]he decision-making process preliminary to the Attorney General's final decision is confidential. Information concerning the deliberative process may only be disclosed within the Department and its investigative agencies as necessary to assist the review and decision-making." USAM §9-10.040. Included in the scope of confidentiality is the recommendation of the United States Attorney's Office. *Id.* "The prosecution memoranda, death penalty evaluation forms, non-decisional information forms and any other internal memoranda informing the review process and the Attorney General's decision are not subject to discovery by the defendant or the defendant's attorney." *Id.* at §9-10.080.

These documents are also protected by the work product privilege. *See e.g.,*

*United States v. Barber*, 297 F.Supp. 917, 922 (D. Del. 1969) (holding that internal

government documents made in connection with the investigation and prosecution of a

case are exempt from production); *Fernandez*, 231 F.3d at 1247.

If defendants had unfettered access to agency decision-making processes, it

would chill debate or discussion by agency employees and degrade the ability of

agencies to function effectively. *W.R. Grace*, 455 F.Supp.2d at 1143 (citing *Assembly

of the State of California v. United States Dep't of Commerce*, 968 F.2d 916, 920 (9th

Cir. 1992)).

## IV.    CONCLUSION

The Court **DENIES** O'Reilly's motion to strike the "circumstances surrounding the

shooting" and "additional violent behavior" non-statutory aggravating factors from

sections C(1) and C(2) of the Notice of Intent.

The Court **DENIES WITHOUT PREJUDICE** O'Reilly's motion to strike the "future

dangerousness" non-statutory aggravating factor from section C(3) of the Notice of

Intent. O'Reilly may renew his motion after the guilt phase if he is convicted on count

two.

The Court **GRANTS** O'Reilly's motion to strike the "lack of remorse" non-

statutory aggravating factor from section C(4) of the Notice of Intent. However, the

Government may use "lack of remorse" evidence to support the "future dangerousness"

factor, provided the "future dangerousness" factor is not stricken following the guilt

phase.

The Court **DENIES WITHOUT PREJUDICE** O'Reilly's request for an Evidentiary

Hearing.

The Court **DENIES** O'Reilly's motion to compel disclosure of the information

Gonzales reviewed before issuing his decision to seek the death penalty.

**IT IS ORDERED**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  February 1, 2008

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on February 1, 2008.

s/Linda Vertriest
Deputy Clerk