**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

                **Plaintiff(s),**        **CASE NUMBER: 05-80025**
                                            **HONORABLE VICTORIA A. ROBERTS**

**v.**

**D-1 TIMOTHY DENNIS O'REILLY,**

                **Defendant(s).**
_____/

**ORDER: (1) DENYING WITHOUT PREJUDICE DEFENDANT'S**
**MOTION TO EXCLUDE GOVERNMENT WITNESS ZOUELFIKAR NEHMEH; (2)**
**DENYING DEFENDANT'S MOTION FOR INDEFINITE CONTINUANCE; and (3)**
**DENYING DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING**

On November 1, 2006, the Government filed a Notice of Intent to Seek the Death

Penalty as to Timothy Dennis O'Reilly.  In the Notice, the Government alleges:

> Future Dangerousness: Defendant stated that he planned to commit
> additional robberies when he is released from prison.  Defendant stated
> that he intends to kill the witnesses who testified against co-defendant
> Norman Duncan when released from prison.  Defendant also stated that
> he would have killed co-defendant Earl Johnson after the Dearborn Credit
> Union robbery if he would have known how Johnson would handle his
> share of the proceeds.

In 2008, O'Reilly had several conversations with Zouelfikar Nehmeh, a

Government witness, regarding an alleged murder-for-hire plot.

During the penalty phase and as evidence of O'Reilly's future dangerousness,

the Government wants to introduce the testimony of Nehmeh, coded letters, and notes

containing identifying information for three Government witnesses O'Reilly allegedly

asked Nehmeh to kill.  In an e-mail dated December 28, 2009, the Government said it

1

will not introduce the alleged murder-for-hire plot during the guilt phase.

Before the Court is O'Reilly's "Motion to Exclude Government Witness Zouelfikar Nehmeh." (Doc. #396). O'Reilly asks the Court to exclude Nehmeh's testimony from the penalty phase because his testimony lacks probative value, is too prejudicial and/or confusing, and is too unreliable to be introduced at the penalty phase.

Also before the Court is O'Reilly's "Motion for Indefinite Continuance Pending Completion by the Prosecution of the Nehmeh/O'Reilly Murder for Hire Investigation and the Trial of any Charges Brought as a Result of that Investigation." (Doc. #395). O'Reilly asks the Court for an indefinite continuance pending the completion of the Government's investigation of his alleged involvement in a murder-for-hire plot, and the trial of any charges brought against him. In essence, O'Reilly says his trial must be delayed until a resolution is reached on the alleged murder-for-hire plot, because unadjudicated criminal offenses must be excluded from the penalty phase of a capital trial as unreliable.

In the alternative, O'Reilly asks the Court to exclude all evidence from the penalty phase that relates to the alleged murder-for-hire plot.

O'Reilly's motion to exclude Nehmeh is **DENIED WITHOUT PREJUDICE**; his motion for indefinite continuance is **DENIED**.

Unadjudicated criminal offenses are inherently unreliable because "no untainted jury, utilizing the Federal Rules of Evidence and the requisite burdens of proof, has found the defendant guilty." *United States v. Bradley*, 880 F.Supp. 271, 287 (M.D. Pa. 1994). Accordingly, although in death penalty cases, the jury may consider "whether

2

any [non-statutory] aggravating factor . . . exists," 18 U.S.C. §3592(c), unadjudicated criminal conduct must first meet a threshold test of reliability.  *See United States v. Beckford*, 964 F.Supp. 993, 1000 (E.D. Va. 1997) (citing *United States v. Davis*, 912 F.Supp. 939, 949 (E.D. La. 1996); *Bradley*, 880 F.Supp. at 287; *United States v. Walker*, 910 F.Supp. 837, 853-54 (N.D.N.Y. 1995)).

In an e-mail dated December 22, 2009, the Government indicated that it provided defense counsel all of the evidence (of which it is aware), that it intends to introduce relating to O'Reilly's alleged murder-for-hire plot with Nehmeh.  In response to an e-mail from defense counsel dated December 28, 2009, the Government said it will expedite the additional discovery defense counsel requested – including a complete transcript of the Nehmeh recording, a copy of the redacted transcript the Government taint team provides the Assistant United States Attorneys ("AUSAs"), and the redacted audio tape the taint team provides the AUSAs.

If there is a penalty phase, the Court will hold an evidentiary hearing before it begins.  Based on the evidence presented at that hearing, the Court will decide whether the evidence is reliable.  The Court will also decide whether the evidence meets the "future dangerousness" test.  *See* Doc. #432.

There is no reason to delay the trial for an indefinite period of time.  The trial will proceed on June 1, 2010.

O'Reilly renews his request for an evidentiary hearing, and specifically asks the Court to hear evidence concerning his transfer from general population to the special housing unit at FCI Milan.  (Doc. #425).  This Request does not persuade the Court to hold an evidentiary hearing in advance of trial.  The issues raised in O'Reilly's Request

3

can be addressed at the evidentiary hearing discussed above.  If the Court allows the

Government to present the alleged murder-for-hire evidence, O'Reilly may present

evidence and argument to rebut such evidence – including his argument that the

Government and/or the Bureau of Prisons did not believe O'Reilly's alleged murder-for-

hire plot with Nehmeh was genuine.

       **IT IS ORDERED**.

                             S/Victoria A. Roberts
                             Victoria A. Roberts
                             United States District Judge

Dated:  December 30, 2009

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on December 30, 2009.<br><br>s/Carol A. Pinegar<br>Deputy Clerk |

4