**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff(s),**         **CASE NUMBER: 05-80025**
                                        **HONORABLE VICTORIA A. ROBERTS**

**v.**

**D-1 TIMOTHY DENNIS O'REILLY,**

        **Defendant(s).**
_____/

## ORDER

Dr. Leigh Hlavaty, Assistant Medical Examiner for Wayne County, did not testify during Earl Johnson's trial. Instead, the Government and defense counsel entered into the following stipulation:

> Dr. Lai Lavati (phonetic), Assistant Medical Examiner for Wayne County performed an autopsy on Steven's[sic] body on December 14, 2001. Dr. Lavati (phonetic) found that Stevens[sic] died as the result of two shotgun wounds, one to his back and the other to the back of his legs. Dr. Lavati (phonetic) found no evidence of close range firing noted on Stevens'[sic] skin.
>
> In the doctor's opinion, based on the diameter of the pellet spreads, one shot was fired from a distance of approximately 57 feet and the other was fired from approximately 46 and a half feet.
>
> The shotgun wound to Stevens'[sic] back was fatal and severed his spinal cord, resulting in his being incapable of voluntary movement of his legs. The shotgun wound to the back of Stevens'[sic] legs was likewise fatal and would have also rendered him incapable of voluntary movement of his legs.
>
> Toxicology testing indicated that Stevens'[sic] blood was free from any drugs or alcohol.

Dr. Hlavaty's testimony in Timothy O'Reilly's trial is consistent with this stipulation.

1

However, Dr. Hlavaty also testified that her distance measurement could be incorrect if Mr. Stephens was running, if his legs were apart, or if more than two shotgun blasts were fired and the pellets overlapped.

In closing argument, the Government may argue that Dr. Hlavaty's distance measurement was simply an estimate, and Mr. Stephens could have been shot at a closer distance than 57 feet and 46 and a half feet.

O'Reilly says it is a violation of his due process right for the Government to make this argument in closing, when the Government stipulated to Dr. Hlavaty's distance measurement in Mr. Johnson's trial. *See e.g., Smith v. Groose*, 205 F.3d 1045, 1052 (8th Cir. 2000) ("To violate due process, an inconsistency must exist at the core of the prosecutor's cases against defendants for the same crime"); *Thompson v. Calderon*, 120 F.3d 1045, 1058 (9th Cir. 1997) ("it is well established that when no new significant evidence comes to light a prosecutor cannot, in order to convict two defendants at separate trials, offer inconsistent theories and facts regarding the same crime"); *United States v. GAF Corp.*, 928 F.2d 1253, 1260 (2nd Cir. 1991) ("Confidence in the justice system cannot be affirmed if any party is free, wholly without explanation, to make a fundamental change in its version of the facts between trials, and then conceal this change from the final trier of the facts"); *United States v. Higgs*, 353 F.3d 281, 326 (4th Cir. 2003):

> In some situations, the Due Process Clause prohibits the government from presenting mutually inconsistent theories of the same case against different defendants. For example, due process may be violated if "an inconsistency . . . exist[s] at the *core* of the prosecutor's cases against the defendants for the same crime," *see Smith v. Groose*, 205 F.3d 1045, 1052 (8th Cir. 2000) (finding due process violation where prosecution obtained two convictions for the same murder based on conflicting

> statements from the same cooperating codefendant) (emphasis added), or where the evidence used at the two trials is "factually inconsistent and irreconcilable," *Paul*, 217 F.3d at 998 (holding that government's argument that both defendants were the triggerman and killed the victim was not inconsistent).

*but see Beathard v. Johnson*, 177 F.3d 340, 348 (5th Cir. 1999) ("a prosecutor can make inconsistent arguments at the separate trials of codefendants without violating the due process clause") (citation omitted).

To cure the due process violation which O'Reilly believes exists, O'Reilly says that, at a minimum, the jury should be aware that the Government seeks convictions of co-Defendants in the same crime, using inconsistent theories.

The Court finds O'Reilly's due process rights will not be violated by the argument the Government may make.

While the Government must prove that O'Reilly killed Mr. Stephens during the commission of a bank robbery, the distance from which the bullets struck Mr. Stephens is not essential to prove any element of any crime O'Reilly is charged with. In addition, whether O'Reilly was the actual shooter does not matter; a jury could convict O'Reilly as an aider and abettor, or based on *Pinkerton v. United States*, 328 U.S. 640, 647 (1946). Finally, the Government's theory has remained the same: O'Reilly and Watson shot Mr. Stephens.

In addition, the Government intends to prove the following non-statutory aggravating factor at the penalty phase: "Defendant shot Norman Stephens from behind, and while Stevens[sic] was already wounded and on the ground." Because the distance from which Mr. Stephens was shot is not essential to this factor either, O'Reilly's due process rights will not be violated at the penalty phase, if the jury is not

aware of the Government's inconsistent positions, assuming they are truly inconsistent.

The Court **DENIES** O'Reilly's request to inform the jury in either the guilt or penalty phase of the stipulation entered into during the Earl Johnson trial.

**IT IS ORDERED**.

s/Victoria A. Roberts<br>
Victoria A. Roberts<br>
United States District Judge

Dated: July 28, 2010

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 28, 2010.<br><br>s/Linda Vertriest<br>Deputy Clerk |