**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

        Plaintiff(s),        **CASE NUMBER: 05-80025**
                                          **HONORABLE VICTORIA A. ROBERTS**
v.

**D-1 TIMOTHY DENNIS O'REILLY,**

        Defendant(s).
_____/

## ORDER

**I.    INTRODUCTION**

This matter is before the Court on Timothy O'Reilly's "Motion to Exclude, Limit, and/or Order Detailed Preview of Victim Impact Witnesses." (Doc. #588). O'Reilly asks the Court to: (1) exclude the testimony of Dr. Cheryl Wills; (2) perform an *in camera* review of the Government's victim impact evidence; and (3) limit the number of witness who may present victim impact evidence.

Oral argument was heard on August 5, 2010.

O'Reilly's motion is **GRANTED IN PART AND DENIED IN PART**.

**II.   APPLICABLE LAW AND ANALYSIS**

    **A.    Testimony of Dr. Cheryl Wills**

The Government intends to introduce the testimony of Dr. Cheryl Wills to explain the severe psychiatric problems Norman Stephens' daughter, Alexis Stephens, allegedly suffers from as a result of Mr. Stephens' death.

O'Reilly relies on *Payne v. Tennessee*, 501 U.S. 808 (1991) to support his

1

argument that the Government cannot present victim impact testimony through an expert. O'Reilly says the Court should either require Ms. Stephens to submit a written statement for her mother to read, or allow her mother to speak on her behalf.

Neither party cites any case law dealing with an expert providing victim impact testimony during the penalty phase of a capital case, nor could the Court find any.

Importantly, Alexis' problems reportedly began developing when she was in the 5th grade, four years after her father's death. She apparently has a history of psychiatric treatment, psychotic breaks and involvement in criminal activity. Dr. Wills saw her on only three occasions in August and September, 2009, when she was 14- or 15-years old. This was 4-5 years after her problems developed, and Dr. Willis has not seen Alexis since. Nonetheless, Dr. Wills is prepared to opine to a reasonable degree of medical certainty, that Alexis' father's death is a substantially contributing factor to Alexis' problems – whatever they are.

While this testimony may have some relevance and probative value, the probative value of Dr. Wills' testimony is outweighed by the danger of unfair prejudice, or misleading the jury. *See* 18 U.S.C. §3593(c).

Ms. Stephens may testify regarding her observations of Alexis since her father's death, and the problems Alexis has due to her father's death.

### B. *In Camera* Review of Victim Impact Evidence

O'Reilly asks the Court to review the proposed testimony of each victim impact witness and determine whether each point offered is relevant and admissible under 18 U.S.C. §3593(c): "information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."

2

For the reasons stated on the record, the Court declines to review victim impact evidence.

The Government indicated that it will produce two letters as part of its victim impact evidence. It must provide defense counsel the letters, and redact the portion of Ms. Stephens' letter which advocates the death penalty for Mr. O'Reilly.

In addition, the Government must inform defense counsel of the recorded phone calls between O'Reilly and his family that it intends to introduce at the penalty phase. Defense counsel must then let the Government know if its authenticating witnesses are necessary.

Finally, the Government must instruct victim impact witnesses that: (1) they cannot tell the jury not to consider the mitigation evidence; (2) they cannot discuss their feelings toward O'Reilly or his co-Defendants, information about the crime, their opinion about what punishment the jury should impose, or the value of Mr. Stephens' life versus the value of O'Reilly's life; (3) they cannot wear anything that symbolizes Mr. Stephens or his death; (4) they must control their emotions as much as possible when giving victim impact testimony; and (5) the Court will end their testimony, if they cannot control their emotions, or if they discuss an improper subject matter.

### C. Limit the Number of Victim Impact Witnesses

O'Reilly says the Government must reduce its proposed 34 victim impact witnesses to a more reasonable number.

At oral argument, the Government represented to the Court that it will produce no more than eight victim impact witnesses. O'Reilly has no objection to this number.

3

### III. CONCLUSION

O'Reilly's motion is **GRANTED IN PART AND DENIED IN PART**.

The Court: (1) **GRANTS** O'Reilly's request to prohibit Dr. Wills from testifying at the penalty phase of O'Reilly's trial; (2) **DENIES** O'Reilly's request that the Court conduct an *in camera* review of the victim impact evidence; and (3) **GRANTS** O'Reilly's request that the Court limit the number of victim impact witnesses.

**IT IS ORDERED**.

                                              s/Victoria A. Roberts
                                              Victoria A. Roberts
                                              United States District Judge

Dated: August 6, 2010

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 6, 2010.

s/Linda Vertriest
Deputy Clerk

---