UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs                                                 Case No: 05-80025
                                                    Honorable Victoria A. Roberts

TIMOTHY O'REILLY,

    Defendant.
_____/

**OPINION AND ORDER**

**I. Objections to the PSIR**

    **A. Maximum Penalty for Count 5 (Preamble Page 2; Paragraph 110)**

Page 2 and Paragraph 110 of the PSIR say the maximum term of imprisonment for Count 5 is 20 years pursuant to 18 U.S.C. § 2113(a). The Government says the maximum is 25 years pursuant to 18 U.S.C. § 2113(d). The Court agrees with the Government.

    18 U.S.C. § 2113 states:

    (a) Whoever, by force and violence, or by intimidation, takes or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; . . . Shall be fined under this title or imprisoned not more than twenty years, or both.
    . . .
    (d) Whoever, in committing, or attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both.

1

According to the verdict form, the jurors found Defendant guilty of Count 5 (bank robbery at Comerica Bank on June 19, 2003), and also found Defendant guilty of assaulting Jonathan Smith or putting Jonathan Smith's life in jeopardy by the use of a dangerous weapon during the commission of the bank robbery. Therefore, 18 U.S.C. 2113(d) applies, and the PSIR should reflect the maximum penalty of 25 years imprisonment.

### B.  O'Reilly attended a meeting in November 2001 (Paragraph 22)

Defendant objects to the following sentence in the PSIR: "In approximately June 2001, planning of the DFCU robbery began with O'Reilly, Johnson, Wilson, Watson, and Duncan participating in several meetings." PSIR, ¶ 22, sentence 2. Defendant says the testimony at trial does not establish that Defendant participated in any planning meetings prior to November 2001. The Court agrees.

Khayyam Wilson testified that Defendant was at a planning meeting in November of 2001. The Court has found no testimony that places him at a planning meeting prior to this date. After reviewing the testimony of Wilson, the Court finds that Defendant began attending planning meetings no earlier than November 2001. See Doc. 644 at 58, Tr. trial vol. 6.

### C.  O'Reilly shot Norman Stephens (Paragraph 26)

Defendant objects to the sentence in the PSIR that says he shot Norman Stephens during the Dearborn robbery. (¶ 26, last sentence). Defendant asks the Court to strike the sentence because the jury did not find that the Government proved beyond a reasonable doubt that Defendant intentionally killed Stephens. *See* Sp. Verdict Form.

The Court declines to do so.

Defendant, in a recorded conversation with Barron Nix-Bey, admitted he shot a guard in the Dearborn robbery. Dominic Young-Guidice testified that Defendant admitted that he shot a guard during the Dearborn robbery. Doc. 648 page 6-7, Tr. Trial vol. 9. Archie Broom also testified that Defendant said he shot a guard during the Dearborn robbery. Doc. 648 at 73, 75, Tr. Trial vol. 9. And, Zoulefikar Nehmeh testified that Defendant said that he shot the guard because the guard was reaching for his gun. Doc. 645 at 37-38, Tr. Trial vol. 7. The Court finds that the testimony shows by a preponderance of the evidence that Defendant shot Stephens during the Dearborn robbery. The sentence will remain unchanged.

**D. The money was split at Birwood St. in Detroit, Michigan (Paragraph 29)**

Defendant objects to PSIR paragraph 29 which states that the Dearborn robbery money was split at the home of Defendant and Duncan on Birwood Street in Detroit. Defendant says this is contrary to trial testimony. Defendant also objects to the statement that McAfee and Mumphord attended the meeting.

After reviewing the testimony of Archie Broom, the Court changes paragraph 29 in the following ways: The Court strikes the sentence in the middle of the paragraph which states: "The meeting was referred to as the 'Birwood money split.'" The Court alters the next sentence to state: "The meeting was attended by Broom, Duncan, O'Reilly, Latanya Duncan (Duncan's wife), Darryl "Spoony" McAfee, Steven "Big Steve" Mumford, Kevin Watson, and an individual known as "Black James" or "Fat James." The Court strikes the remaining portion of that sentence. The Court adds the sentence: "The money was given to these individuals." The remainder of the paragraph will

3

remain unchanged. These changes are based on the testimony of Archie Broom. Doc. 648 at 68-71, Tr. Trial vol. 9.

**E. Adjustment for Role in the Offense (Paragraph 49)**

The Government objects to paragraph 49 of the PSIR because it says that there is sufficient evidence for the Court to apply a four level increase for Defendant's role in the Dearborn robbery as an organizer/ leader. Based on trial testimony, the Court believes that the Defendant does not fit the Guideline definition of an organizer or leader.

Under § 3B1.1(a), "If a defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." Application note 2 states: "To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." "The United States has the burden of proving the applicability of the enhancement under § 3B1.1 of the Sentencing Guidelines by a preponderance of the evidence." *United States v. Finkley,* 324 F.3d 401, 403 (6th Cir. 2003).

The Court is mindful that only one juror found that Defendant established by a preponderance of the evidence, that he was not a planner or organizer in the Dearborn Federal Credit Union robbery. However, the Court believes that the trial testimony does not establish that Defendant organized, led, managed, or supervised another participant.

Matthews testified that Johnson came to him with the plan to rob the Dearborn Federal Credit Union. Mathews testified that Johnson told him that he (Johnson)

4

investigated and researched, and had inside information. Matthews met Defendant for the first time on the night of the aborted robbery. They got together for the successful robbery a few nights later. When the robbery was complete, Duncan split the money. Matthews testified that Duncan did most of the talking, and that he barely heard Defendant speak. Khayyam Wilson testified that Earl Johnson contacted him to be part of a robbery in June or July 2001. When he left this meeting with Johnson in June or July of 2001, Johnson did not tell him anyone else was involved. Wilson testified that in November there was a planning meeting at Duncan's house. Defendant was there. However, Wilson testified that Johnson was the one with the information on when to do the robbery, and Duncan planned how to do it.

Archie Broom testified on direct examination that he heard Duncan and Defendant plan the robbery at the motorcycle club. However, on cross examination Broom said he told the FBI that Defendant would do whatever Duncan told him to do, and Duncan was the dominant person.

Although there is evidence that Defendant may have participated in the planning of the robbery, there is no evidence that he organized, managed, supervised, or led another participant. To the contrary, the evidence shows that Defendant was led by others. The Court declines to increase Defendant's offense level by four points.

### F. Adjustment for Serious Bodily Injury (Paragraph 55)

Defendant objects to a four level increase under § 2B3.1(b)(3)(B). He says Jonathan Smith did not suffer a serious bodily injury during the Comerica robbery, and that the evidence does not support this enhancement. The Court disagrees.

Section 2B3.1(b)(3)(B) says that if a victim sustained serious bodily injury,

increase the offense level by 4.  Section 1B1.1  Application note 1(L), defines serious bodily injury as an "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation."

Jonathan Smith, a guard, testified that he was shot in the calf of his right leg during the Comerica robbery.  He suffered a through and through wound, meaning the bullet entered and exited his calf.  He was transported by ambulance from the scene to Sinai Grace Hospital, where he was given medication and his wound was "patched up." However, his wound later became infected, and he went to Henry Ford Hospital, where doctors "cut out" the infection.

Smith's gunshot wound qualifies as a "protracted impairment" of a "bodily member"--his leg.  When Smith got the infection cut out, this was a surgery.  The Court finds that the 4 level increase for serious bodily injury is appropriate.

**G. Adjustment for Role in Offense (Paragraph 58)**

The PSIR adds four points to Defendant's offense level for the Comerica robbery, as an organizer or leader pursuant to § 3B1.1(a).  Section 3B1.1(a) states: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels."  Both parties agree that this increase is inapplicable; the Comerica robbery involved less than 5 participants. The Court agrees as well, and declines to increase the offense level for the Defendant's role.

**H. Adjustment for Body Armor (Paragraph 59)**

Defendant objects to a four level increase for the use of body armor under § 3B1.5 in paragraph 59 of the PSIR.  Defendant says that this increase should not apply to him because the guideline provision became effective after the date of the offense.  The Defendant is correct; this four level increase does not apply.

**I. Adjustment for Obstruction of Justice (Paragraph 60)**

Defendant objects to the two level increase for obstruction of justice in the PSIR for the Comerica robbery.  Defendant says that the Court should not rely on the testimony of witnesses Zoulefikar Nehmeh and Dominic Young-Guidice because they lack credibility and their testimony does not establish a substantial basis for the adjustment.  The Court disagrees.

Section 3C1.1 states: "If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase by 2 levels."  Application note 4(A) says that an example of the type of conduct to which this adjustment applies is "threatening, intimidating, or otherwise unlawfully influencing a . . . witness . . ., directly or indirectly, or attempting to do so."

After a review of their testimony, the Court finds that the witnesses Nehmeh and Guidice establish, by a preponderance of the evidence, that Defendant attempted to have witnesses killed to prevent them from testifying against him.  Nehmeh testified that

Defendant asked him to kill three witnesses, Khayyam Wilson, Henry Matthews, and Barron Nix-Bey, to prevent them from testifying against him.  Doc. 645 at 32. Guidice testified that Defendant asked him to kill Archie Broom because he was cooperating with the government. Doc. 648 at 10-14.  The 2 point increase in paragraph 60 is appropriate because both Broom and Nix-Bey had information about the Comerica robbery that could be used against Defendant.

## II. Defendant's Guidelines Calculations

With this resolution of objections, probation's calculations for Group 1 remain the same (¶ 46-51); the adjusted offense level for Group 1 is 45.

### Revised Calculations for Group 2:

53. **Base Offense Level** for violation of 18 U.S.C. § 2113 is located at § 2B3.1, which establishes a base offense level of 20.                                  20

54. Specific Offense Characteristic: Pursuant to § 2B3.1(b), the offense level is increased by 2 because property of a financial institution was taken.                                                                                                                      +2

55. Specific Offense Characteristic**:** Pursuant to § 2B3.1(b)(3)(B), the offense level is increased by 4 because the victim sustained serious bodily injury.                                                                                                         +4

56. Specific Offense Characteristic: Pursuant to § 2B3.1(b)(7)(C), the offense level is increased by two, because the loss exceeded $50,000 but was less than $250,000.                                                                                                        +2

57. Victim related adjustment: None

58. Adjustment for Role in the Offense: None

59. Adjustment for Use of Body Armor: None

60. Adjustment for Obstruction of Justice: Increase 2 levels pursuant to § 3C1.1                                                                                                                                    +2

| | |
|---|---|
| 61.     Adjusted Offense Level (Group 2 Subtotal): | **30** |

**Multiple Count Adjustment**

**Units**

**Group 1 (Counts 1-3)**

| | |
|---|---|
| 64.  Adjusted Offense Level ...................................45 | 1 |

**Group 2 (Counts 4-5)**

| | |
|---|---|
| 65.  Adjusted Offense Level....................................30 | 0 |
| 66.  Total Number of Units (§ 3D1.4)   Greater Adjusted Offense Level....................45 | 1 |
| 67.  Increase in Offense Level...................................0 | |
| 68.  Combined Adjusted Offense Level.....................45 | |
| 69.  Adjustment for Acceptance of Responsibility: None | |
| 70.  Total Offense Level | 45 |
| 71.  Chapter 4 Enhancement: None | |
| **72.  Total Offense Level:** | **45** |

## III. Conclusion

Mr. O'Reilly's offense level is 45.  His criminal history category is V.  Defendant faces a mandatory life sentence.

                                 /s/ Victoria A. Roberts  
                                 Victoria A. Roberts  
                                 United States District Judge

Dated:  February 8, 2011

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on February 8, 2011.
>
> s/Linda Vertriest
> Deputy Clerk